PEOPLE ex rel. EINSFELD v. MURRAY et al.

(Supreme Court, Appellate Division, First Department. April 24, 1896.)

1. INTOXICATING LIQUORS—CONSTITUTIONALITY OF ACT.
    Laws 1896, c. 112, entitled "An act in relation to the traffic in liquors, and for the taxation and regulation of the same, and to provide for local option," is an exercise of police power, and not a tax law, though by its short title it is called the "Liquor Tax Law."

2. CONSTITUTIONAL LAW—APPROPRIATION OF PUBLIC MONEY—LIQUOR LICENSE-TAX.
    Laws 1896, c. 112 (Liquor Tax Law) § 13, providing that all taxes, fines, etc., under the act shall be paid to the county treasurer, and one-third of the amount shall be paid to the treasurer of the state as part of the general tax revenue of the state, and the remaining two-thirds shall belong to the town or city in which it was collected, is not an appropriation of public money.

3. SAME—SPECIAL CITY LAW.
    Such act is not a special city law, within Const. art. 12, § 2, because it makes provision in regard to the inhabitants of cities different from that established by other provisions of the state.

Appeal from special term, New York county.

Certiorari by Fred. G. Einsfeld to Joseph Murray and others. The writ was dismissed, and relator appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

J. H. Choate and S. Untermyer, for appellant.
The Attorney General and Julius M. Mayer, for respondents.

PATTERSON, J. On the 23d of March, 1896, the relator made application to the respondents, commissioners of excise of the city of New York, for a license to sell wines and liquors at retail in certain designated premises in that city for a period of one year. The commissioners rejected the application, and refused to grant the license, on the sole ground of the want of power, arising from the passage of an act of the legislature approved March 23, 1896, known as the "Liquor Tax Law," under the provisions of which they alleged they could not grant the relator a license for a term expiring later than April 30, 1896. Thereupon application was made to the supreme court for a writ of certiorari to review the action of the commissioners, which, being granted, the respondents made return setting forth their proceedings, and stating, in substance, the ground of their refusal as above mentioned. On the coming in of the return the relator contended before the court that the refusal of the respondents to grant the license applied for was based upon an untenable ground, for the reason that the act approved March 23, 1896 (chapter 112, Laws 1896), is unconstitutional and void, and as a consequence the license laws in operation immediately before its passage remained in force and effect. It was held by the court at special term that the act of 1896 is valid, and was passed in conformity with the constitution of the United States and of the state of New York, and that the writ must be dismissed. From the order, and what is called a judgment embodying that decision, this appeal is taken.

The subject presented for our consideration on the appeal is that of the constitutionality of the law in question. It has been severely arraigned in argument as offending against justice and reason. It may be as unjust, unwise, oppressive, and odious as the relator claims, but all that does not help in the solution of the question before us, and we have no opinion to express on that subject. The final word concerning it has been spoken by the court of appeals. In Bertholf v. O'Reilly, 74 N. Y. 516, it is said:

"No law can be pronounced invalid for the reason, simply, that it violates our notions of justice, is oppressive and unfair in its operation, or because, in the opinion of some or all of the citizens of the state, it is not justified by public necessity, or designed to promote the public welfare. We repeat, if it violates no constitutional provision, it is valid, and must be obeyed. The remedy for unjust or unwise legislation, not obnoxious to constitutional objections, is to be found in a change by the people of their representatives according to the methods provided by the constitution."

Much of the argument against the validity of this law proceeds upon the assumption that it is fundamentally and radically a tax law. That being conceded, many of the contentions of the learned counsel for the relator might prevail. If the sole or the main purpose of the enactment is merely to raise revenue by taxation for state purposes, there are features contained in this bill of inequality and diversity in the imposition of taxes and the infliction of penalties that might well lead to its complete condemnation. Although there is no express provision in the constitution of the state of New York to that effect, yet it may be that taxes, to be valid, must

be uniform; that, were it otherwise, the property of the citizen subjected to the arbitrary imposition of a discriminating tax might be practically confiscated, and therefore taken without due process of law, or persons of the same class be deprived of the equal protection of the laws secured by the constitution of the United States. The power of the state to tax may be limitless in extent, but ought not to be exercised, among those similarly situated, unequally, and to the advantage of some and the detriment of others. But these and kindred suggestions seem to have no real place in the discussion connected with the particular enactment now before us. Although, by its short title, it is called the "Liquor Tax Law," and although it designates the money paid for the privilege of dealing or trading in liquors in quantities of less than five gallons a "tax," yet the whole scope, purpose, and intent of the law is, as its fuller title expresses, "an act in relation to the traffic in liquors, and for the taxation and regulation of the same, and to provide for local option." The body of the act conforms to the objects stated in the title. A system regulating the traffic in and through the state is created and instituted. It is primarily and essentially an exercise of the police power of the state over a particular trade or business which from early times has been made the subject of state legislation, the general history and drift of which may be found, by those interested in the matter, in the opinion of Judge Wright in the important case of Board v. Barrie, 34 N. Y. 657. That such excise legislation is peculiarly within the police power is recognized by all courts of authority, and it would seem no longer open to dispute. See the authorities collected in note 11, Am. & Eng. Enc. Law, p. 583. The fourteenth amendment to the constitution of the United States does not impair the police power of the state. Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273; Powell v. Pennsylvania, 127 U. S. 678, 8 Sup. Ct. 992, 1257; Barbier v. Connolly, 113 U. S. 27, 5 Sup. Ct. 357. It is within the competency of the state to interdict all traffic in liquors within its boundaries. That is admitted. The legislature, having such an extreme power, may exercise the lesser one of regulating the traffic. It may make such regulations, and put such trammels upon the traffic, as seem to be expedient or necessary to the safety, the welfare, or the protection of the people. Bertholf v. O'Reilly, supra. In undertaking to do so by the enactment of a general law which shall control the whole traffic in each and every part of the state, it may recognize local differences and needs, and make special provision therefor. If diversity arises therefrom in the application to particular localities of any of the incidents of the law, the legislature is not incompetent to authorize that diversity. It is part of the general scheme. It arises from the necessity of treating local conditions and situations as they are found, and from the recognition of patent facts, such as that there are striking differences between the retail traffic in liquor in a great metropolis and in a remote rural neighborhood, or even in separate parts of the same municipality, and that disproportion must of necessity be allowed in the impost exacted for the privilege

of engaging in such traffic in each of such places. All such provisions come within the one general act as parts of one general excise system, and the regulation thereof.

That the purpose of the act is not primarily to raise revenue from taxation is apparent from other considerations. Leaving out of the discussion altogether the pertinent question whether such taxes as those imposed by the act under consideration are in reality anything more than license fees, and confining ourselves to what is deducible from the structure and provisions of the act itself, we find that a third and conspicuous and all-important matter is provided for, and that is the local option feature, which plays so prominent a part in the legislation that it is made one of the cardinal elements proclaimed in the title of the act. The system created and established by this act is by the express terms thereof made to supersede and take the place of all prior existing excise laws or systems throughout the whole state. It establishes an entirely new system, bringing under state control that which was theretofore under local, municipal, or community jurisdictions and administration. The right to traffic in liquor is not limited to individuals, except so far as certain disqualifications are designated in the act; but no one is permitted to sell at retail or deal in liquor in less than certain quantities without state permission first obtained, to be evidenced by the possession of a certificate which takes the place of a license, and for which dues called "taxes" are to be paid. Taxation is but an incident; but one, and that not the chief, although a necessary, element of the legislation. Regulation of the traffic is the fundamental purpose of the law. The taxes are not levied upon persons nor upon property, for a license is not property except in a qualified sense, and as it is made so by the terms or operation of a statute; and the taxes are, and are declared to be "excise taxes upon the business of trafficking in liquor," and hence a mere incident to the regulation of that business. It is all within the police power of the state, exercised for the supposed general welfare; and the power to regulate must of necessity include the power to license or tax. Nor does the want of uniformity of punishment for the violation of the penal provisions of the act render it unconstitutional. The same offense, punishable under a general law, may be so punished with more severity in one part of the state than in another (Williams v. People, 24 N. Y. 405; In re Bayard, 25 Hun, 546), and that may constitute a penal offense in one part of the state that is not punishable in another (People v. Havnor, 1 App. Div. 459, 37 N. Y. Supp. 314, affirmed [N. Y. App.] 43 N. E. 541).

Regarding, as we do, this act as one constituting inherently and essentially an exercise of the police power of the state, we are brought to the consideration of the particular objections taken to it, as violating the provisions of the constitution of the state of New York.

First. The position is taken by the relator that the law is unconstitutional, because it violates section 20 of article 3 of the constitution of the state, which provides that the assent of two-thirds of

the members elected to both branches of the legislature shall be requisite to every bill appropriating the public moneys or property for local or private purposes. The act of 1896 was passed by a three-fifths vote only. In section 13 of the act it is provided that all taxes, fines, and penalties (except those imposed upon or gathered from the traffic in liquors on railroad cars, steamboats, etc.) under the act "in counties containing a city of the first class shall be paid to the special deputy commissioner for such county, and in all other counties to the county treasurer of the county in which the traffic is carried on, and one third of the revenue resulting from taxes, fines and penalties in the provisions of this act, less the amount for collecting the same, shall be paid by the county treasurer and by the several deputy commissioners within ten days from the receipt thereof to the treasurer of the state of New York, to the credit of the general fund, as a part of the general tax revenue of the state, and shall be appropriated to the payment of the current general expenses of the state, and the remaining two thirds thereof, less the amount allowed for collecting the same, shall belong to the town or city in which the traffic was carried on from which the revenues were received, and shall be paid by the county treasurer of such county, and by the special deputy commissioners to the supervisor of such town, or to the treasurer or fiscal officer of such city; and such revenues shall be appropriated and expended by such town or city, in such manner as is now or may hereafter be provided by law." The real question in connection with this contention of the relator is whether the two-thirds of the product mentioned above is public money within the meaning of the constitution. We think, clearly, it is not. The public moneys and property therein mentioned and referred to are those belonging to the state. Prohibited appropriation is of such moneys only. In Board v. Allen, 99 N. Y. 532, 2 N. E. 459, it was claimed that chapter 213 of the Laws of 1879, relating to certain county treasurers and their compensation, was unconstitutional, because it appropriated public moneys for local purposes; but it was held that the act did not apply, because the appropriation was not of state moneys. The accuracy of the definition of "public money" as that belonging to the state can scarcely be doubted. It seems to us indisputable that the two-thirds of the net product of the taxes, fines, and penalties referred to in the thirteenth section of the act under consideration could not be regarded in any sense as state moneys. They are not so designated in the act. On the contrary, they are expressly and specifically declared "to belong to the town or city in which the traffic is carried on." The anterior rights of localities as theretofore existing were done away with. The act with regard to the two-thirds of the revenue simply recognizes that there were such rights, and professes to provide anew for them with some measure of justice. It thus declares that some part, at least, of that which the localities had been accustomed to receive directly shall come to them and be theirs. That is not an appropriation of the moneys of the state, but a devotion to the component parts of the state of what was esteemed to be their just shares of the product of

a particular revenue. At no period of time do the two-thirds belong to the state. From the beginning they are separated, and the state share and the share of the town or city are kept apart in ownership. There seemed to have been scrupulous care taken in constituting and maintaining that separate ownership. The two-thirds part does not become money of the state simply because the state's agent collects it through and by means of the state machinery. The mere method of the collection or realization of the amounts of the taxes, fines, and penalties cannot govern the matter, and hence we conclude that the two-thirds referred to, not being state money, the constitutional provision does not apply.

Second. It is further objected by the relator that the act under consideration classifies cities in a different way than the constitution does, and that for that reason it violates section 2 of article 12 of the constitution. This objection proceeds, we think, upon a misapprehension of the object of that section. The circumstances which led up to the adoption of it are well known. It had not been unusual for laws to be passed seriously affecting the local interests and property of cities without notice to the authorities of such cities, and without any opportunity for them or the inhabitants to be heard upon the subject. That had grown to be a great crying evil, and the provision of the constitution was intended to remedy it. But it must be noticed that this classification has reference only to laws relating to the property, affairs, or government of cities, and it is only with reference to that kind of laws that the classification is effectual or material. The act of 1896, in question, is not one that can be said to relate to either of those things. As we have before stated, it is a general law in the fullest sense of that word, having regard to the regulation of the liquor traffic throughout the whole state, and contains such particular provisions with reference to special localities as the conditions of those localities seem to require. In no sense does it relate to the property, affairs, or government of the city. It is purely a matter of state government, and is a general law upon that subject, and is not, as we think, at all within the provisions of the constitution. A provision in a general law cannot be said to be a special city law simply because it makes some provision with regard to the inhabitants of the city, different from that established for other portions of the state, unless it contains something relating to the government of that city separate and distinct from the general provision relating to the government of the state. This law contains no such provision. The nearest approach to one is that it abolishes the existing excise commissioners, but that abolition results from the total extinction of an entire excise system, and the creation of another and different one; one including the whole state, and embracing in a single scheme everything necessary to the establishment and operation of a complete system, even to the varying details required by different conditions in different localities. Every existing excise board or commission throughout the whole state is abolished. It is no more a special city law because it abolishes the office of excise commissioner of the city of New York than would

be a law abolishing the office of coroner. No one city or town is interested in the general plan more than any other. It is a matter of state, and not municipal, governmental policy, and it could never have been contemplated that the voice of cities or municipal bodies, as such, should be made potential in legislation of a general character applying to the state as a whole, and not specifically or exclusively affecting the interests, property, or internal governmental affairs of a municipality.

Third. The further contention is made that the law should have been submitted to the mayors of cities of the first class, as provided by the section of the constitution above referred to. Much of what we have said with reference to the objection last considered applies equally to this, and it is unnecessary to repeat it. The law is not a special city law as to cities of the first class. It does not relate to the government, property, or affairs of a particular city, and was not such a measure as, under the constitution, should have been submitted in the manner claimed by the relator's counsel.

The order and final adjudication appealed from must be affirmed, with costs. All concur.