County Court, Broome County, December, 1896. Unreported.

PEOPLE v. SAMUEL J. WEIR.

APPEAL from a judgment of the Recorder's Court of the City of Binghamton convicting the defendant of having violated section 1 of article 1 of title 7 of the Ordinances of the City of Binghamton in keeping his saloon open for the transaction of business, between the hours of twelve o'clock midnight and one o'clock in the morning.

Charles F. O'Brien and R. B. Richards, for appellant.

James T. Rogers, for respondent.

ARMS, Co. J.: Section 1 of article 1 of title 7 of the Ordinances of the City of Binghamton provides that "every saloon, restaurant, bar or other place, where any distilled or fermented liquor is kept for sale (except drug stores) and every billiard room, bowling alley, or place where games of chance or skill are carried on or permitted, as a business, or in connection with any business, shall be closed on Sundays and every night on or before twelve o'clock and shall remain closed until five o'clock the following morning.

"Any person owning or having charge of any place above mentioned, who shall violate any provisions of this section shall be subject to a fine not to exceed $100."

This ordinance was in force when chapter 112 of the Laws of 1896, known as the Liquor Tax Law, took effect.

There is no dispute over the facts, and the only question pre-

sented here is whether the ordinance above quoted is still in force notwithstanding the passage of chapter 112 of the Laws of 1896. By section 44 of that act it is provided that "the provisions of any special or local law, grant or charter in conflict with this act are hereby repealed and annulled" and it is contended by the appellant that this provision repealed the provisions of the local ordinance, while on the other hand it is contended by the respondent that the legislature and the ordinance in question do not conflict; that the ordinance does not assume to regulate the traffic in liquors but is a part of the police power conferred upon the local authority to regulate the times, and the places, where such traffic shall be conducted.

It was said in People v. Murray, 4 App. Div. 193, that the result of the new liquor law was "the total extinction of an entire excise system and the creation of another and different one, including the whole State and embracing in a single scheme everything necessary to the establishment and operation of a complete system, even to the very details required by different conditions in different localities." This case was affirmed in the Court of Appeals, it being the case in which the constitutionality of the law was assailed.

It is a well-settled rule that a later statute covering the same subject-matter and embracing new provisions operates to repeal the prior act, although the two acts are not in express terms repugnant.

Another well-settled rule is, that where a later statute not purporting to amend a former one upon the same subject, covers the whole subject and was plainly intended to furnish the whole law thereon, the former statute will be held to be repealed by necessary implication.

Chapter 112 of the Laws of 1896, is named "Liquor Tax Law," but it was said in People ex rel. Einsfeld v. Murray, 149 N. Y. 39: "It is radically different in some respects from the excise laws which it superseded. But the changes are in the administration of the excise system and not in its essential character. The most notable changes are (1) State supervision in place of supervision through Boards of Excise, and (2) the opening of traffic to all citizens (with certain exceptions) who shall pay the license tax and give the bond required."

A careful examination of the Liquor Tax Laws leads one almost irresistibly to the conclusion that it was intended as a

general and uniform law, and as the only law, to govern and control the business of trafficking in liquors on the points to which its provisions relate and for which they provide. To hold otherwise might lead to serious complications and difficulties.

Under its provisions a person holding a tax certificate has the unquestionable right to sell up to one o'clock in the morning Until that time, he is not required to expose to view from the street the inside of his place of business. Now if the ordinance in question is still in force, while he would be obliged to close and lock his outside door at twelve o'clock, he might have any number of people inside between the hours of twelve and one to whom he could sell whatever they wanted for the period of one hour, during which time their acts and conduct would not be subject to the observation of or interference by any officers of the law, as neither a special agent or a police officer would have any authority to break in and enter the place. It seems quite apparent that the two provisions are both inconsistent and repugnant. The license tax imposed by this act is uniform and equal in its several grades in all the counties of the State and, if it were to be subject to either abridgment or partial nullification by local authorities it would no longer be a uniform scheme under the direction of the State, but might be made subordinate to the varied and different ideas of the different towns, villages and cities throughout the State. Such legislation would be absurd in theory and might easily lead to inequality and injustice. Moreover, I am of the opinion that the ordinance in question was expressly repealed by section 44 of the Liquor Tax Law.

From these views, it follows that the judgment of conviction should be reversed and the defendant discharged.