STATE *ex rel.* GRIGSBY, Atty. Gen., v. BUECHLER County Treasurer.

1. Laws 1897, Chap. 72, provides for an annual license fee of $400, beginning July 1st, to be paid in advance to the county treasurer by retail liquor dealers, or a *pro 'rata* sum in case application is made after July 1st, all licenses expiring the following June 30th.   It requires each applicant to file an approved bond with the county treasurer, and allows the authorities of a city, organized town, or township to levy and collect an additional license, which must be paid before the applicant can engage in the traffic.   Such authorities may refuse to grant a license if they deem the applicant unfit, and in that event the money paid to the county treasurer shall be returned to the applicant on the warrant of the board of county commissioners.   Section 7 provides that all such moneys re-

ceived by a county treasurer shall by him be placed to the credit of the general fund of the county, and, on each license granted, he "shall transmit the sum of $150 to the state treasurer," which shall be placed to the credit of the general fund of the state. *Held*, that the statute is a police regulation, and the license fee is not therefore a tax, within Const. Art. 11, requiring uniformity of taxation.

2. The statute is not invalid because it gives the state three-eighths of the fees without requiring it to pay a portion of the public expenses incident to the enforcement of the statute, since such obligation is discharged by the state's contributions to the expense of the judiciary and the maintenance of charitable, penal and reformatory institutions.

3. The state, being entitled to 37½ per cent of the fee for the full year, is entitled to a proportionate part of licenses paid for a fraction of a year; such money to be transmitted without reduction as soon as the applicant has become fully vested with lawful authority to engage in the business.

4. In the statute providing that, in case a license is denied, the money paid to the county treasurer shall be returned to the applicant "upon the warrant of the board of county commissioners," the word "warrant," as therein used means authority simply, and not the municipal security known as a "county warrant."

(Opinion filed July 20, 1897.)

Original application for a peremptory writ of mandamus to compel C. Buechler, as treasurer of the county of Hutchinson, to transmit certain moneys to the state treasurer. Writ issued.

*Melvin Grigsby*, Atty. Gen., for relator.

The act is constitutional. State v. Doherty, 29 Pac. 855; Pleuler v. State, 10 N. W. 481; People v. Murray, 38 N. Y. S. 909; Territory v. Connell, 16 Pac. 209; Minnehaha County v. Champion, 5 Dak. 433, 37 N. W. 766; People v. Coleman, 4 Calif. 46; 11 Am. & Eng. Encyc. of Law, 583 *et seq*; Kidd v. Pearson, 128 U. S. 1; State v. Aiken, 42 S. C. 239; East St. Louis v. Trustees, 102 Ill. 492; Distilling Co. v. City of Chicago, 112 Ill. 19.

*Wellington Brown* (*Burke & Goodner*, of counsel), for defendant.

The legislative act not providing for the payment by the state of any portion of the expense connected with enforcing

the law, the state is not entitled to any portion of the license money.    Cooley on Taxation, 2nd Ed., p. 598.    The act, while purporting to be police regulation, is in fact primarily a revenue measure, and repugnant to the constitutional provisions for the raising of the revenues.    Cooley, Const. Lim., p. 614, note; Const., So. Dak., Art. XI, § 1 and 8.    The power of taxation, being a sovereign power, can be exercised by the legislature only when and as conferred by the constitution.    Black on Interp. of Laws, p. 317; City of Burlington v. Bumgardner, 42 Ia. 673; City of Burlington v. Ins. Co. 31 Ia. 102; State v. Herod, 29 Id. 125; Mays v. Cincinnati, 1 Oh. St., 273; State v. Roberts, 11 Gill & Johns (Md.) 506; Kip v. City of Patterson, 26 N. J. 301; Railroad v. Hoboken, 41 N. J. L. 76; Freeholder v. Barber, 7 N. J., 66; Com. v. Stodder, 2 Cush. 571; Johnson v. Philadelphia; 60 Pa. St. 450; Mayor v. Railroad, 32 N. Y. 273 Muhlenbrinck v. Commissioners, (N. J.) 36 Am. Rep. 520; Dunham v. Trustees, 5 Cow. 462; Com. v. Fowler, (Ky.) 33 L. R. A., 840.

FULLER, J.    This original application for a peremptory writ of mandamus made by the state on the relation of the attorney general, is to compel the defendant, C. Buechler, treasurer of Hutchinson county, to transmit to the state treasurer $187.50, being three-eighths, or 37½ per cent., of the money paid by certain saloon keepers to said county treasurer for licenses already granted to sell intoxicating liquors at retail, pursuant to chapter 72 of the Laws of 1897, which, among other things, provides for a license of $400 per annum, beginning July 1st, and expiring June 30th, currently, to be paid to the county treasurer annually in advance, on or before the 1st day of July in each year, or a *pro rata* portion thereof for the remainder of the year in case application therefor is made at any time after the 1st day of July.    Before engaging in the business of selling intoxicating liquors at retail, and on or before the 1st day of July in each year thereafter, the dealer must file with

the county treasurer a bond in the sum of $2,000, with two or more sufficient sureties, to be approved by the board of county commissioners.  In addition to the license required to be paid to the county treasurer, it is expressly declared to be the intention of the legislature to allow the authorities of any city, incorporated town, or township to levy and collect a license for the sale of intoxicating liquors therein; and it is made the duty of such authorities to prohibit the party paying the license, and filing the bond as above provided, from engaging in the business until he has paid a license, which must be fixed by said authorities respectively, at not less than $200, nor more than $600.  But such authorities are in no event allowed to receive a license fee from one who has not filed an approved bond with the county treasurer, and paid to such officer the required license, nor can they permit such a person to engage in the business.  Should the proper officers of any city, town, or township deem an applicant for a license unfit to carry on the business, they may, in their discretion, refuse to grant a license; and in that event the money paid to the county treasurer shall be returned to such person upon the warrant of the board of county commissioners.  Section 7 of the act provides that "all moneys received by any county treasurer under section 1 of this act shall be by him placed to the credit of the general fund of the county and upon each license granted in any county of the state, the county treasurer of such county shall transmit the sum of one hundred and fifty dollars ($150) to the state treasurer which shall by said state treasurer be placed to the credit of the general fund of the state.  *  *  *"  The statute contains numerous other provisions designed to regulate the traffic and carry the law into effect, which will be incidentally noticed later on if found to be essential to a determination of the questions presented.  Counsel for the defendant demur to the amended and verified application for a peremptory writ of mandamus on the ground that the same does not state facts sufficient to justify the issuance of the writ, but,

without devoting space to a vindication of the averments .of that pleading, we are disposed to regard the application sufficient with respect to form, and proceed to determine from an examination of the various provisions of the enactment what effect should be given to section 7, above quoted, in case the same is found to be within some recognized legislative power.

No claim is made that the aggregate license which under the law may be imposed is unreasonable, but counsel contend that Sec. 7, in so far as the same requires a remittance to the state treasurer, is plainly a revenue measure, and therefore repugnant to Art. 11 of the constitution, which requires the legislature, by general law, to provide funds for the disbursement of all lawful demands against the state by a uniform tax, levied only upon real and personal property according to the value thereof in money, and that every tax so levied shall specify the object thereof, from which the same must never be diverted. Pursuant to the will of a majority, aroused to consciousness of the fact that the retail liquor traffic is an expensive evil, resulting in irreparable injury to society, entailing upon the public the burden of increased pauperism and additional criminal prosecutions, often to no avail, the legislature deemed the license system to be the most effective scheme by which to restrict, regulate, and control the business, and the law enacted unmistakably partakes of the nature of a police regulation, designed to impose upon the dealer the burden of liquidating, so far as practicable, the damage thus occasioned. The primary object of the law, as specifically declared by the title, is to "provide for the licensing, restriction, and regulation of the business of the manufacture and sale of spirituous and intoxicating liquors"; and the fact that the general revenue is incidentally increased is not sufficient to invalidate the act, or subject the same to any constitutional objection. The general proposition is founded on reason, and well supported by authority, that constitutional provisions prohibiting taxation except in pursuance of law, and requiring a uniform levy upon all real and personal property

sufficient to defray the ordinary annual expenses of the state, have no application to a police regulation of the liquor traffic imposing a license thereon, calculated to partially prevent and alleviate the direful influences and inherent consequences of the business.   Territory v. O'Connor, 5 Dak. 397, 41 N. W. 746; State v. Doherty, (Idaho) 29 Pac. 855; Pleuler v. State, 11 Neb. 547, 10 N. W. 481; Commissioners v. Nelson, 19 Kan. 243; People v. Murry, (Sup.) 38 N. Y. Supp. 909; Territory v. Connel, (Ariz) 16 Pac. 209; United States Distilling Co. v. City of Chicago, 112 Ill. 19; Chilvers v. People, 11 Mich. 43; Mitchell v. Williams, 27 Ind. 62; State v. Aiken, 42 S. C. 222, 20 S. E. 221; People v. Thurbor, 13 Ill. 554.

The occupation being one which the lawmaking power had the right to prohibit entirely or partially suppress by the issuance of a license under specified restrictions to persons only who possess certain moral attributes, the money thus received is in no constitutional sense a tax, and the same may be rightfully devoted to such public use as the legislature may direct, independently of the expense occasioned by the traffic, and without regard to any of the considerations which prompted the license enactment.   Says Mr. Tiedeman, at page 276 of his recent treatise on the Limitations of Police Power:   "The money collected by way of license as a police regulation may go into the state treasury for general revenue purposes, and need not be devoted specially to the relief of burdens which the prosecution of the trade or occupation imposes on the state, provided that the character of the occupation is such that restrictions upon its pursuit, looking to its partial suppression, would be constitutional, whatever their character may be. Since the primary object of such law would be to operate as a restriction upon the trade, and not to raise a revenue, the incidental increase in the revenue would constitute no valid objection to the law."   In holding that the question is one of legislative expediency, and not for the courts, and that the legislature has absolute power to direct the public use, to which funds

realized from a liquor license shall be devoted, the supreme court of Illinois say: "Such a fund is not required by any known constitutional requirement to be applied solely to municipal purposes. The general assembly had the power to dispose of such a fund for any public use. It might be required to be paid into the state treasury, the county treasury, or applied to the use of schools in any district or place where the general assembly might think proper to place it." City of East St. Louis v. Trustees of Schools, 102 Ill. 489. "A license fee, when applied to any proper subject, is not a 'tax,' in the sense of that clause of the constitution prescribing the rule of uniformity in levying taxes." Wiggins Ferry Co. v. City of East St. Louis, Id. 560. In the case of People v. Murray, *supra,* the supreme court of New York said that a "liquor tax law providing that all taxes, fines, etc., under the act, shall be paid to the county treasurer, and one-third of the amount shall be paid to the treasurer of the state, as part of the general tax revenue of the state, and the remaining two-thirds shall belong to the town or city in which it was collected, is not an appropriation of public money."

Having found the principle involved in the act disposing of the license fees paid to the county treasurer repugnant to no constitutional provision, and clearly within a sound legislative discretion, we will consider, under standard rules of construction, the various provisions of the chapter, and, if necessary, other enactments in *pari materia,* for the purpose of ascertaining just what the legislature intended by the language employed in Sec. 7, as well as the recitals of other provisions of law pertaining to the conditional deposit of money with the county treasurer, as one of the initiatory steps in the procurement of a license to sell intoxicating liquors. In support of the theory that the money which the county treasurer is required to transmit to the state treasurer to be placed to the credit of the general fund is, in effect, a tax levied against the county upon the issuance of a license, counsel for the defend-

ant suggest that no provision is made for the payment by the state of any portion of the public expense incident to the traffic, or connected with the enforcement of the law. By a cursory examination of the governmental and financial relations existing between the state and the counties into which the same is divided, when considered with the fact that the state contributes largely to the expense of the judiciary and the maintenance of our charitable, penal and reformatory institutions, we are led to the conclusion that the law is not subject to the criticism urged.

One of the positions which counsel for the defendant strive to maintain is "that if the state is entitled to any portion of the license, there is no construction that can be placed upon Sec. 7 of the act by which it can be determined what portion is to be paid to the state, and where the amount is to be obtained by the county treasurer to pay the state." It has been noticed that $400 is the amount which must be paid to the county treasurer as an annual license fee, and a proportionate amount thereof is required when a license is granted for a recognized fraction of a year. It will therefore be readily seen that the $150 mentioned in said section relates to the full period of 12 months, commencing on the 1st day of July, and ending June 30th of that year. The general purpose and intent of a legislative enactment, considered, when necessary, with existing laws bearing upon the subject to which any of its provisions relate, is a reliable key to the meaning of its parts, and a criterion for the expansion of restricted expressions. Says Mr. Black, at page 84 of his treatise on Interpretation of Laws: "Words may be interpolated in a statute, or silently understood as incorporated in it, where the meaning of the legislature is clear, plain, and unmistakable, and such supplying of words is necessary to carry out that meaning, and make the statute sensible and effective." To the same effect, see Suth. St. Const. p. 318; Lawrence Co. v. Meade Co., 6 S. D. 528, 62 N. W. 131; Jones v. Trust Co. (S. D.) 63 N. W. 553. The entire chapter,

reviewed in the light above indicated, leads to the irresistable conclusion that the legislature intended to provide a statute by which the state would receive into its general fund $150 of every $400 paid under the law to the county treasurer as an annual license fee, and a proportionate amount in case licenses are granted for less than one year, which money is to be transmitted without any deduction as soon as the applicant has become fully vested with lawful authority to engage in the business; and the balance of the deposit must thereupon be placed to the credit of the general fund of the county.    No other reasonable effect consistent with the intention of the legislature can be given to Sec. 7, and the view of counsel that the entire amount of money must be placed to the credit of the general fund of the county, and that a county warrant for $150 must in every instance be issued thereon, and transmitted to the state is not sustainable.    As a county warrant is payable only in the order of registration, and the board is without power to direct its issuance for a sum in excess of the amount of money actually due, although the value of such warrant be greatly below par, it would be absurd and unreasonable for the legislature to require a rejected applicant, who has paid his money to the county treasurer in contemplation of a license, to accept in lieu thereof a warrant upon the general fund of the county, which might be greatly depreciated or practically without value.    The statute provides in such cases that the "money shall be returned to the person, firm, or corporation that has paid the same, upon the warrant of the board of county commissioners"; but the word "warrant" as therein used, means authority simply, and has no reference to a municipal security known as a "county warrant." The term "warrant" in its most comprehensive sense, means "a writing from a competent authority, in pursuance of law, directing the doing of an act, and offering him protection from damage if he does it." People v. Wood, 71 N. Y. 376; Webst. Inter. Dict.; 28 Am. & Eng. Enc. Law, 710; And. Law Dict.   Were the question in doubt, a

most familiar rule for the interpretation of statutes suggests the rejection of a construction rendering the provision ineffectual, in that it takes the property of a private person for a public purpose, without due process of law or just compensation, in contravention of Secs. 2 and 13 of the bill of rights.

It is a significant fact, appearing from the record, that the defendant, though a layman, knows the exact amount to be forwarded to the state treasurer for licenses issued for less than one year, and stands ready to remit three-eighths of all money received on account of licenses issued under the law in case the same is found to be constitutional. Moreover, it is a matter of common knowledge that numerous county treasurers have, without apparent difficulty, correctly construed the law, and have forwarded to the state treasurer three-eighths, or 37½ per cent. of the money paid to them for licenses issued. Our conclusion is that the law and the circumstances of the case entitle the relator to a peremptory writ of mandamus, and the same will therefore issue as prayed for.