(101 App. Div. 265)

### PEOPLE v. KASTNER.

(Supreme Court, Appellate Division, Third Department. January 4, 1905.)

1. **INTOXICATING LIQUORS—WRONGFUL SALE—PROSECUTION—EVIDENCE.**

 In a prosecution for illegally selling intoxicating liquors two of the people's witnesses testified that they bought a liquor called "Malt Rose" from defendant, and carried a sample away with them, and delivered it to C., who testified that he delivered the sample to P., a chemist, for examination, and P. testified that the sample contained 5.43 per cent. alcohol. Defendant admitted selling "Malt Rose," which was an article of commerce; insisted that it did not contain alcohol sufficient to render its sale a violation of law, and denied that the purchasers carried any of the liquor away with them. *Held*, that defendant was entitled to introduce evidence of another chemist, who had made analyses of "Malt Rose" for the purpose of showing its contents.

Appeal from Special Term, St. Lawrence County.

Fred Kastner was convicted of selling liquor without a liquor tax certificate, and from an order denying a motion for a new trial he appeals. Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Theo. H. Swift, for appellant.
Clarence S. Ferris, Dist. Atty., for the people.

PARKER, P. J. The people's witnesses Beach and Roach testify: That they went into the barroom on September 22, 1903, where the defendant was tending, and asked what the defendant was selling there. That the defendant replied that he sold soft drinks, naming some, and among them a drink called "Malt Rose." The witnesses asked for the latter drink, and a glass full was poured out for each. That they drank part, and that Beach put a part from his glass into a small bottle he had there. This change from glass to bottle was made while the defendant had for a moment stepped into an adjoining billiard room that was also under his charge. They then paid for the drinks and went away. That same evening they took the bottle to one J. L. Cann, and left it with him. Cann testified that he took the bottle and contents the next day to Prof. Priest, of Canton, and left it with him for analysis. Prof. Priest, a chemist, testified that he analyzed it, and found that it contained about 5.43 per cent. of alcohol. This was substantially the case made against the defendant. The defendant testified that the witnesses asked for the "Malt Rose," and that he sold and delivered to each a glass thereof; that each drank part, and he

threw away what was left, washed the glasses, and put them away. He denies emphatically that either of the men put any of his drink into a bottle, or carried any of it away; and he denies that he was called from the bar while they were there. He, and also one of the proprietors of the hotel, testifies that at that time there was no lager beer at the hotel. During the trial the defendant's counsel called Prof. Williams, a chemist, and proved by him that on January 14, 1904, he obtained a sample of "Malt Rose" from the Albion House bar for the purpose of analysis. He also testified that on several occasions prior to that date—one of them being October 9th—he had analyzed the liquor commonly called and sold as "Malt Rose." Defendant's counsel then asked the witness what the analysis showed. This evidence was objected to, and excluded under the defendant's exception. The defendant then stated that he proposed to connect it, and show it was the same kind of Malt Rose and was the same thing that was sold to those two witnesses; to which the court replied that he "could not prove an analysis of liquor obtained in January as bearing on liquor in September." It also appears from a further discussion of its admissibility, at folios 111 and 112 of the appeal book, that the court considered it not pertinent to any issue that was really in the case, for the reason that, inasmuch as the defendant denied specifically that any of the liquor that he sold was ever carried away by Beach and Roach, none could have been analyzed by Prof. Priest. The trial court substantially held that, unless some of the liquor sold by defendant had been taken away by Beach, there was no proof of what that liquor was, and hence no violation of the law was shown; but that, if defendant's statement was wrong in this particular, and some of the liquor was taken to Prof. Priest, and analyzed by him, a comparison of such analysis with others was irrelevant, because defendant's counsel did not criticise the accuracy of that of Prof. Priest; that the question was really narrowed down to whether a part of what defendants sold was carried away; and the case was left to the jury entirely upon that theory. But the one question was submitted to the jury, and the defendant's guilt or innocence was made to depend upon it.

But it seems to me that there was a further question presented by the evidence. The plaintiff's witnesses testify that they asked the defendant to give them "Malt Rose," and the defendant testified that he did so. Concede that some of that very drink was thereupon delivered to Prof. Priest, whether or not it was correctly analyzed and showed 5.43 per cent. of alcohol is still a question to be determined. The defendant's counsel did not concede that, if the drink which the defendant sold was the one that Prof. Priest analyzed, it was a correct analysis: His statement that he could not dispute Prof. Priest's analysis was because he had no satisfactory proof of where that liquor came from. But he insisted that, if it was the drink that the defendant sold, viz., "Malt Rose," it did not contain alcohol enough to render its sale a violation of the law. He asked, therefore, to show what an analysis of the drink "Malt Rose" showed it to be composed of. It sufficiently appears, I think, that there is such a drink sold in the market under that name, and from what Prof. Williams testified it is fair to infer that it is made from some definite receipt or formula. He had analyzed

it several times, and speaks of it as a known article of commerce. It also appears elsewhere in the case that it was such an article of commerce. Under such circumstances he should have been allowed to testify what he found it to consist of. If his different analyses varied so much that it was plain that a specimen procured in January was no criterion of what a specimen in September would contain, then it would be ineffective to discredit Prof. Priest's analysis, or to discredit the claim that he had received a portion of what the defendant sold. But if various analyses showed the constituents in the samples used were the same, or substantially so, I am of the opinion that the defendant had the right to prove the analysis of a brand similar to that which he testified he sold, as tending to discredit either the accuracy of Prof. Priest's analysis, or the truthfuless of the people's claim that he had analyzed the same drink that the defendant sold. The defendant claims that what he sold the people's witnesses was "Malt Rose," and that it was an inoffensive drink, containing very little, if any, alcohol. It seems to me he had the right to prove both of these facts. He might prove the first by his own oath, but still he might be short of a defense until it appeared what the drink consisted of. The evidence which he offered to prove this latter fact might have established it, and it was therefore error to exclude it.

For this reason the judgment should be reversed, and a new trial should be ordered. All concur; SMITH, CHASE, and CHESTER, JJ., in result.