## PEOPLE v. COX.

(Supreme Court, Appellate Division, Third Department. June 29, 1905.)

1. INTOXICATING LIQUORS—UNLAWFUL SALE.

A sale of liquor known as "malt rose" containing between .74 per cent. and 1.18 per cent. in volume of alcohol, and intended to aid in the evasion and defeat of the liquor law, is a violation of Liquor Tax Law (Laws 1897, p. 207, c. 312) § 2, defining liquors, as used in the act, to include all distilled or rectified spirits or fermented or malt liquors.

[Ed. Note.—For cases in point, see vol. 29, Cent. Dig. Intoxicating Liquors, §§ 142–144.]

2. SAME—INDICTMENT—SUFFICIENCY.

The crime was sufficiently charged in the indictment without including therein an allegation that the liquor so sold was intoxicating.

[Ed. Note.—For cases in point, see vol. 29, Cent. Dig. Intoxicating Liquors, § 271.]

3. COUNTY COURTS—JURISDICTION.

Under Const. art. 6, § 14, abolishing the distinction between courts held by a county judge for the trial of a civil and criminal action, where the county judge of Lewis county held the County Court in St. Lawrence county at the request of the county judge of the latter county from October 17th until the 21st, when the county judge of St. Lawrence county held it, and defendant was convicted of violating the liquor tax law, he cannot complain of the jurisdiction on the ground that the judge of the adjoining county opened and held the October term of court.

Houghton, J., dissenting.

Appeal from Trial Term, St. Lawrence County.

Henry Cox was convicted of violating the liquor tax law. From the judgment (92 N. Y. Supp. 125) and an order denying his motion to set aside the verdict and judgment, and for a new trial, and for an arrest of judgment, the defendant appeals. Affirmed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Lowen E. Ginn, for appellant.

Clarence S. Ferris, Dist. Atty., for the People.

CHASE, J. The defendant was indicted for the crime of "unlawfully selling distilled and rectified spirits, wine, fermented and malt liquors, in quantities less than five wine gallons at a time, in a town where the sale of liquors is prohibited, and without having obtained and posted a liquor tax certificate, and without having paid the tax therefor, contrary to the provisions of the liquor tax law, committed as follows: The said Henry Cox, on the 31st day of August, 1904, at the town of Potsdam, in this county, unlawfully did sell to one Owen O. Wiard distilled and rectified spirits, wine, fermented and malt liquors in quantities less than five wine gallons at a time, to wit, two glasses of lager beer, without having obtained and posted a liquor tax certificate, and without having paid a tax therefor; the said town of Potsdam then and there being a town in which a liquor tax certificate is prohibited as a result of a vote duly had in said town upon questions one, two, and four, submitted under section 16 of the liquor tax law [Laws 1897, p. 216, c. 312], contrary to the provisions of the liquor tax law." He was tried upon such indictment, and the jury, on evidence uncontradicted by the defendant, rendered a special verdict as follows:

"The jury find that on the 31st day of August, 1904, the defendant, at the town of Potsdam, in this county, did sell and deliver to one Owen O. Wiard one pint of a certain liquor called 'malt rose'; that said liquor then and there contained between seventy-four hundredths and one and one and eighteen-hundedths per cent. in volumn of alcohol; that said alcohol was formed therein by fermentation or added in the process of manufacture; that he had at the time no liquor tax certificate; and that the traffic in liquors in said town at said time was unlawful."

The county judge holding said term of court on the application for judgment upon the special verdict wrote an opinion, in which, among other things, he said:

"Philput, the manufacturer of the beverage sold by defendant under the name of 'malt rose,' testified that one of the ingredients was the lager beer known as 'export lager.' Mr. Williams, the chemist called by defendant, testified that on the assumption that the export beer used by Philput was an average sample of American export beer, the mixture resulting from the ingredients enumerated by Philput would contain .11 per cent. in volume of alcohol. But the analyses of five samples of malt rose by Mr. Williams showed from .74 per cent. to 1.18 per cent. in volume of alcohol. The excess, amounting from seven to ten times the original quantity, can be accounted for only upon the theory of fermentation, or the intentional addition of alcohol in some form. The resultant was therefore, to some degree at least, fermented liquor or distilled spirits. The sole remaining question is the practical one whether the quantity of alcohol is so small that the law ought to ignore it.

It was in evidence, and is undisputed in this case, that Schlitz Milwaukee lager beer contains only 2.45 per cent. of alcohol. Clearly, a lager beer containing this amount of alcohol cannot be lawfully dealt in in a no-license town. If the contents of a bottle of this beer were to be diluted by two parts of water to one of beer, I have no doubt the resulting beverage would still be within the prohibition of the law, and yet it would contain a less percentage of alcohol than some of the samples of malt rose submitted to Mr. Williams. On the trial of this action Philput, the manufacturer, was unable to determine by inspection whether a bottle shown him was malt rose manufactured by him or lager beer. If the product is manufactured as a substitute for lager beer, and sold either for the purpose of deceiving the purchaser or evading the law, the charity of the law should not be exercised toward it. In practically all of the trials in this court involving alleged violations of the liquor tax law in the town of Potsdam since the last biennial town meeting, the last line of defense has been that, in any event, the defendant could not be guilty of any offense, because he only kept for sale or sold malt rose. I incline, therefore, to hold, after considerable observation in other cases as well as in this, that the article in question is peculiarly intended to aid in the evasion and defeat of the law, and that its sale with the quantity of alcohol shown to be contained is a violation of the liquor tax law." People v. Cox, 45 Misc. Rep. 311, 92 N. Y. Supp. 125.

During the trial and in his charge to the jury the county judge held and said, in substance, that the question for determination was whether the defendant had trafficked in distilled and rectified spirits, wine, fermented and malt liquors, and that it was immaterial whether such liquors were intoxicating. The excise acts passed by the Colonial Legislature relating to the sale of liquor in every instance referred either in the title of the act or in the act itself to "strong liquor" or "strong and spirituous" liquor, and the first act of the Legislature of this state relating to excise (chapter 17, p. 109, of the Laws of 1779) is entitled "An act to lay a duty of excise on strong liquors, to appropriate monies therefrom, and for the better regulation of inns and taverns within this state." The title to chapter 164, p. 439, of the Laws of 1801, is "An act to lay a duty on strong liquors and for regulating inns and taverns." The title of chapter 628, p. 405, of the Laws of 1857, is "An act to suppress intemperance and to regulate the sale of intoxicating liquors." The title of chapter 175, p. 456, of the Laws of 1870, is "An act regulating the sale of intoxicating liquors." The title of chapter 646, p. 1016, of the Laws of 1873, is "An act to suppress intemperance, pauperism, and crime." The title of chapter 340, p. 510, of the Laws of 1883, is "An act to regulate the sale of intoxicating liquors in cities having a population of over three hundred thousand inhabitants." The title of chapter 401, p. 824, of the Laws of 1892, is "An act to revise and consolidate the laws regulating the sale of intoxicating liquors." The liquor tax law (chapter 112, p. 45, of the Laws of 1896, as amended by Laws 1897, p. 207, c. 312) is entitled "An act in relation to the traffic in liquors, and for the taxation and regulation of the same, and to provide for local option, constituting chapter twenty-nine of the general laws." By section 2 of said act the term "liquors," as used in said act, is defined as including and meaning all distilled or rectified spirits, wine, fermented and malt liquors. Under the several acts referred to passed prior to chapter 112, p. 45, of the Laws of 1896, and also under the other general and spe-

cial acts passed prior to said act of 1896 relating to excise, and the many acts amendatory thereof and supplementary thereto, it became a question of fact in each case where a violation of an act was asserted whether the liquor sold or given away was strong, spirituous, or intoxicating, as the case might be.  Unless the liquor was such that its strong, spirituous, or intoxicating qualities were well known, it was necessary in each case to show affirmatively that it was strong, spirituous, or intoxicating, and thus within the prohibitive part of the act which it was claimed had been violated.  It seems to have been the deliberate intention and purpose of the Legislature in passing the liquor tax law to omit therefrom the words "strong," "spirituous," and "intoxicating," and to include within the prohibitive parts thereof the traffic in all alcoholic beverages within the definition of "liquor" as contained in such statute, and to relieve the court from determining as a fact whether the liquor sold or given away is intoxicating.  Cullinan v. McGovern (opinion by Bischoff, J.) 94 N. Y. Supp. 525.  In this case the people's witnesses testify that the liquor sold by the defendant was lager beer.  Lager beer is one of the best known of malted liquors. Blatz v. Rohrbach, 116 N. Y. 455, 22 N. E. 1049, 6 L. R. A. 669. The jury found that the liquor sold by the defendant was malt rose, and the judgment is based on such finding.  It appears from the evidence that malt rose is a beverage made to imitate lager beer, and that it has the same general color, taste, and appearance as lager beer, and that it is bottled in the same way.  The jury has found that the liquor sold contained from .74 to 1.18 per cent. of alcohol.  In the testimony of the manufacturer he gives the ingredients used by him in the concoction thereof.  One of the ingredients is export beer, which he testified is a fermented and malted liquor.  The alcohol in the export beer used as one of the ingredients of malt rose is sufficient to make about eleven-hundredths of one per cent. of alcohol in malt rose as bottled and sold. Among the other ingredients of malt rose are hop ale extract, consisting of the extract of hops, and of glucose to sweeten it, and also burned sugar and soapina.  It appears that if these ingredients, when mixed, are exposed to the air, that they will ferment, and, as but .11 per cent. of alcohol was put into the malt rose in question, the alcohol found therein except such .11 per cent. must have been the result of the fermentation of the concoction itself.  The alcohol in malt rose was consequently in part added thereto and in part formed therein.  If the alcohol contained in the malt rose as sold was produced therein by fermentation of the ingredients forming it, the beverage comes within the plain terms of the statutory definition of liquor.  A construction of the act that would exclude from its terms all beverages that had not of themselves been rectified, distilled, fermented, or malted would deprive the act of much of its value as a police measure.  We are not willing to say that a beverage to which perchance is added a sufficient quantity of rectified or distilled spirits or alcohol contained in malt or fermented liquor equal to or in excess of liquors that are well known to be spirituous

and intoxicating would not be within the terms of the definition used in the act. (See Ency. Americana, Article "Fermentation.") We do not mean to hold that to add a trace of rectified or distilled spirits or fermented or malt liquor to drugs or other liquids would necessarily constitute such compound a liquor within the terms of the liquor tax law. We simply hold that malt rose, as sold by the defendant in this case, was within the prohibition of the liquor tax law, and that the crime was sufficiently charged in the indictment, without including therein an allegation that the liquor so sold was intoxicating.

The defendant also claims that his trial and conviction were without legal sanction, for the reason that the October term of the County Court of St. Lawrence county was appointed to be held on October 17th, and that on that day neither the county judge of St. Lawrence county nor the special county judge of said county was present, but the county judge of an adjoining county opened and held said court until October 21st, on which day the county judge of St. Lawrence county held said court, and continued to hold said court until after the trial of the defendant, which took place on October 25th. St. Lawrence county has a special county judge, and the defendant insists that, as it is not shown that the county judge and special county judge of said county were incapable of acting in this criminal action, the criminal side of the court could not be adjourned from day to day from October 17th to October 21st by any other county judge, and that consequently the trial and conviction of the defendant were without jurisdiction. The distinction between courts held by a county judge for the trial of civil and criminal actions was abolished by section 14 of article 6 of the Constitution of 1894. By said section of the Constitution courts of sessions, except in the county of New York, were abolished, and the jurisdiction of courts of sessions, except in the county of New York, was vested in the County Courts. It is also expressly provided by said section of the Constitution that "a county judge of any county may hold county courts in any other county when requested by the judge of such other county." It appears that the county judge of Lewis county held the County Court in St. Lawrence county on October 17th at the request of the county judge of St. Lawrence county, and that he continued to hold said court at said request until October 21st. Whether, when there is a special county judge in a county capable of acting as a county judge of a county other than that in which the court is held, can, at the request of the county judge of said county, preside at the trial of a criminal action, is not necessary for consideration. The County Court is one court with civil and criminal jurisdiction, and such court was duly adjourned to October 21st. On and after that day, including the time when the defendant was tried and convicted, the court was actually in existence, and held by the county judge of said county. The defendant's objection to the jurisdiction of the court is without merit.

The judgment of conviction should be affirmed. All concur, except HOUGHTON, J., who dissents.

HOUGHTON, J. (dissenting). The defendant was indicted for selling lager beer. On the trial it transpired that he sold what is known as "malt rose." The defendant offered to prove that this beverage was not intoxicating, and the trial court held and charged the jury that the statute was violated by the sale of malt or fermented liquors whether they were intoxicating or not. This was error, for which the conviction should be reversed.

It is true that the liquor tax law (Laws 1897, p. 207, c. 312) defines the "liquors" the sale of which is prohibited without a liquor tax certificate to mean and include "all distilled or rectified spirits, wine, fermented and malt liquors," and does not specifically say that they must be intoxicating; but I think it is the plain intent of the statute to prohibit and regulate the sale only of those liquors and beverages which may produce intoxication. In the case of the People ex rel. Einsfeld v. Murray, 149 N. Y. 367, 44 N. E. 146, 32 L. R. A. 344, the law was claimed to be unconstitutional principally because it was a simple tax law; and it was held that it was not a tax law, but an excise law, having for its primary purpose the regulation of the sale of liquors. Andrews, C. J., in his opinion specifically approved of what was said by the court below (4 App. Div. 185, 38 N. Y. Supp. 909), and in addition said:

"The character of the act of 1896 (chapter 112, p. 45), whether a tax law in a proper sense or a law enacted under the police power, must be determined from its whole scope and tenor, and there can be no reasonable doubt, we think, that it is of the latter character. It is radically different in some respects from the excise laws which it supersedes. But the changes are in the adminstration of the excise system, and not in its essential character. * * * The analogy between the law of 1896 and the former excise laws is strongly marked. There is the same necessity of a public certification of a right to engage in the traffic, the same restrictions and regulations intended to guard the traffic and reasonably protect the public against its acknowledged evils, the same principle of local option, and the act incorporates the principle of the civil damage law. The new features of the system may prove to be efficient means of repression and regulation; such as the change in the administrative agencies, and the much larger tax upon the right to engage in the traffic."

Under the former excise laws it is not questioned that a liquor must have been intoxicating to come within their prohibitions of sale. The Legislature possesses the right to control and regulate the traffic in intoxicating liquors because of its sovereign police power, which it may exercise to preserve the public morals or to promote the public safety or prosperity. Metropolitan Board of Excise v. Barrie, 34 N. Y. 666. It also has the right to pass health laws, and to prohibit the sale of food or beverages deleterious to the public health. But it does not and could not prohibit the sale of pure food or harmless beverages, which in no way affect the public morals or public safety or public health. If the liquor tax law is to be given the narrow construction that the sale of all "fermented or malt liquors," whether intoxicating or not, is prohibited, the invalid food known as "kumiss," "a fermented, dietetic, and sanitary drink made from cows' milk with sugar and yeast, and allowed to ferment until it becomes effervescent and slightly alcoholic" (the

Century Dictionary), cannot be sold without procuring a liquor tax certificate. Very many other harmless medicinal and refreshing drinks would also come under the ban. The act should receive no such interpretation.

Although the question was not presented precisely as it now is in People v. Kastner, 101 App. Div. 265, 91 N. Y. Supp. 1004 (decided by this court), it seems to me the spirit of that decision is violated by the prevailing holding herein. There was no pertinency in reversing the judgment of conviction in that case unless the intoxicating properties of the beverage there sold (which was "malt rose") was an element of the crime of selling liquor without a liquor tax certificate.

It is very possible that the defendant violated the act, and that "malt rose" is another name for lager beer, and a mere subterfuge to evade the law; but the jury should have been permitted to pass upon the question whether or not it was a subterfuge, and was lager beer, or was intoxicating.

The judgment of conviction should be reversed, and a new trial granted.