BRIDGET GALLAGHER v. P. W. BENNETT'S HEIRS.

Though a tenant will not, in general, be permitted to question the title of the landlord under whom he went into possession, yet if there be fraud on the part of the landlord in the execution of the lease, and he is unable by reason of insolvency to indemnify the tenant for rents wrongfully exacted, the tenant may, while in possession, purchase a superior title, if he does so in good faith, from a well grounded fear of eviction, and may rely on the title thus acquired in resisting a suit by the landlord for possession.

APPEAL from Harris.    Tried below before the Hon. James Masterson.

*Stewart & Barziza*, for appellant, cited Sloan v. Martin, 33 Texas, 418, 419 ; Calmley v. Stanfield, 10 Texas, 551, 552 ; Glein v. Rice, 6 Watts, 44 ; Croxall v. Shererd, 3 Wall., 287.

*Gray & Botts*, for appellees, after reviewing authorities referred to by appellant's counsel, cited the following, viz.: Smith on Landlord and Tenant, Am. Ed., 293 and note *a ;* also, p. 294, *et seq. ;* Rawle on Covenants for Title, 262, 263, and 268, 269, note 3 ; 2 Smith's Leading Cases, 3 Am. Ed., note to Doe v. Oliver, and Duchess of Kington's case, Mary, 418–424 ; Smith's English Notes, 509, 510 ; American Notes of Hare & Wallace, 531, and 540–543.

WALKER, J.—P. W. Bennett brought this suit against the appellant to recover rent and the possession of a lot in the city of Houston.

On the sixth of August, 1861, Bennett executed a lease, for a term of twelve years, to the husband of appellant, with rent reserved.   Mrs. Gallagher and her husband paid the rents to Bennett, acknowledging their possession under him, until 1867, when she refused to allow the rents to Bennett.   Suit was not brought until the eighth of March, 1869.

John Gallagher, the husband, having died, the appellant, in an amended answer, sets up that though her husband leased the lot from Bennett, that Bennett never had any title, nor was ever entitled to possession of the lot, and that she did not claim under Bennett ; that Bennett's only claim of title was through a tax sale, illegally made, and which conferred no title on him ; that the property had been sold as belonging to Jno. Birdsall ; that in truth

it did not belong to him; that Birdsall was dead at the time of the assessment and sale for taxes.

She charges that her husband and herself were ignorant of the facts at the time they leased the lot from Bennett; that Bennett falsely and fraudulently represented to them that he had a good and legal title to the premises, and that they were deceived and defrauded by Bennett's false representations; and that she remained in ignorance of the fact that Bennett was not the true and legal owner of the property until the year 1866, when John Kennedy demanded possession of the premises, and threatened her with a suit and eviction therefrom if she did not allow the rent to him; that she employed counsel to investigate the title; that her counsel informed her that Bennett's title was not good, but that Kennedy held a good and valid title.     She avers that P. W. Bennett was at the time insolvent and unable to indemnify her in any manner if she continued to pay the rents to him; that Bennett's estate is insolvent; that under these circumstances she purchased the title to the property from Kennedy.

There is some evidence going to show that Bennett was served with a written notice of the defect in his title and demand made upon him to make it good; but the witness by whom the notice was sent, if at all, being dead at the time of the trial, the notice was not proven.

In an amended answer, filed April 1, 1872, the appellant sets out her title from the government down through *bona fide* purchasers.     The verbal evidence introduced by Mrs. Gallagher on the trial, we think, was sufficient to have given her the right to dispute the title of her former landlord, Bennett.

There is not one word of evidence to prove that the appellant has ever acted in fraud of the rights of Bennett; she was herself made to pay to Kennedy an advance of $200 above the price he paid for the lot.

The following bill of exceptions is found in the record:

"Be it remembered, that on this, the first day of April, 1872, before our honorable District Court, on the trial of the foregoing cause, after plaintiffs had closed their evidence, and defendant had given evidence, as appears in statement of facts, the defendant offered to introduce a copy of a deed from the record of deeds in Harris county (duly proved and registered, after due notice of filing of said deed had been given to plaintiffs [through] their counsel, and after defendant had made her affidavit that she could not procure the original), from A. Briscoe, executor of the estate of John Birdsall, deceased, to John Shea, bearing date the seventeenth day of April, 1843, to the lot in controversy, and offered to continue her deraignment of title from the government down to herself, adversely to that of plaintiffs; whereupon plaintiff objected to the admission of such deed, and to any further evidence of title on the part of defendant, because there had been no testimony introduced showing that defendant had been evicted from the possession of the lot, or had been threatened with eviction by any *bona fide* owner of said lot; and that, in the absence of such testimony, the defendant could not controvert or dispute the title of plaintiff, under which she had acquired possession of said lot; and that the title to the premises could not be inquired into in this suit; which objection was sustained by the court; to which ruling of the court the defendant excepts," etc.

It will be seen by this bill of exceptions that the court ruled out the evidence of the defendant's title from Kennedy. The charge of the court instructed the jury that a tenant is not allowed to question the title of the landlord under whom the tenant went into possession, unless threat of eviction, or actual eviction by virtue of a paramount title, be shown by the tenant; but it does seem to us that

the court has rendered it impossible, by ruling out the defendant's title, to show that eviction had been threatened by one holding a paramount title.

The court further instructed the jury, under the evidence before them, to find for the plaintiff possession and rent.

The jury should have been allowed to determine whether the threat of eviction came from a *bona fide* owner of the lot. It does appear to us, that under our system of laws, this was a case to which the principle recognized in the charge, that a tenant in possession will not be allowed to dispute his landlord's title, does not apply. If there was fraud in the execution of the lease, and the estate of Bennett was insolvent and could not indemnify the appellant for rents wrongfully exacted—if she acted in good faith, and from a well grounded fear of eviction from her term under Bennett, and acting under the advice of counsel, without fraud against her landlord, she should have been allowed in this suit to test her title through Kennedy with that of Bennett to the lot.

We think the doctrine laid down in Perry v. Rice, 10 Texas, 382; Calmley v. Stanfield, 10 Texas, 551; Andrews v. Richardson, 21 Texas, 297; 2 Smith's Leading Cases, 458; 1 Wms. & Saund., 418; 6 Wend., 666; Glein v. Rice, 6 Watts, 44; and Croxall v. Shererd, 3 Wallace, 287, sufficiently supports our view of this case.

We will introduce from the opinion of the court in Calmley v. Stanfield the following quotation: "The proposition, that a tenant will not be heard to dispute the title under which he entered as a general one, is correct; but it is believed to be subject to some exceptions, and the modern tendency of the courts has been liberally to allow those exceptions; and each one, of course, must depend upon its own peculiar circumstances."

For the reasons herein indicated the judgment of the District Court is reversed and the cause remanded.

REVERSED AND REMANDED.