EX PARTE H. E. MASSEY.

No. 3164.   Decided December 6, 1905.

1.—Local Option—Place of Contract—Soliciting Order—Sale.

On trial for a violation of the local option law, where the information charged that C. was conducting in the County of C. an establishment for the sale of liquor; that local option was in force in H. County and defendant was the agent of C., and as such agent he solicited and received from H. in H. County an order for the sale and delivery of one quart of whisky; that it was agreed between H. and defendant that the order was to be forwarded from H. County to C. in C. County; that C. reserved the right to reject or fill the order; that if he filled the order the whisky was to be delivered to the express company in C. County, to be transported to H. County and there delivered to the purchaser H.; but when the liquor was delivered to the common carrier in C. County it was then and there to become the property of H. and the express company was to transport the same as the agent of said H.   Held that the information charges no violation of the law, as the sale of the whisky was made at the point of shipment, if the whisky had been delivered and reached its destination in H. County.

2.—Same—Constitutional Law—Soliciting Orders—Intoxicating Liquor.

The Act of the Twenty-ninth Legislature, page 379, laws 1905, prohibiting the solicitation of orders for the sale of intoxicating liquor in any territory where local option is in force, for the sale or delivery of said liquor in such territory without regard to any sale therein, is void under article 16, section 20, of the Constitution of the State of Texas, which prohibits sales only in the local option territory, and because the solicitation of sales is not prohibited by said constitutional provision.

3.—Same—Soliciting Orders for Intoxicating Liquors no Offense—Constitutional Law.

Under article 16, section 20, of the Constitution of the State of Texas, the authority to legislate is limited to the prohibition of a sale within the prescribed limits where the local option law is operative, and does not extend to soliciting or taking orders in the local option district to deliver intoxicants in such district, as this does not constitute a sale.

4.—Same—Constitutional Law—Rule of Construction.

It is a well known rule, sanctioned by all legal authorities, that where the Constitution provides how a thing may or shall be done, such specification is a prohibition against its being done in any other manner; and the solicitation of an order to sell intoxicants is nothing more than an executory contract and by its very term excludes the fact that a sale has been consummated.

5.—Same—Constitutional Law—Local Option—Inherent Power to Legislate.

Prior to the adoption of article 16, section 20, Constitution of the State of Texas, the people had no inherent power to legislate on the subject of local option, in the absence of some constitutional provision authorizing this, and such constitutional provision gave the people the right only to prohibit the sale and not the soliciting of orders of intoxicating liquors, and the Legislature cannot delegate greater authority to the voters of the territory named, to make a law adopting local option in such territory.

6.—Same—Constitutional Law—Legislative Power—Power Delegated to People.

When the people spoke under article 16, section 20, of the Constitution of the State of Texas, the Legislature was deprived of its authority over the subject therein named and full authority was expressed over the subject in said constitutional enactment, and full authority was delegated therein to the voters of the locality to be affected, with regard to the sale of intoxicating liquors and prohibiting the same, and nothing was left to the Legislature to regulate, or to the exercise of police power with reference thereto except with reference to sales of such intoxicants.

**7.—Same—Constitutional Law—Rule of Construction.**

The rule of construction is, that when the constitution defines the circumstances under which a right may be exercised or a penalty imposed, the specification is an implied prohibition against legislative interference, to add to the condition or to extend the penalty to other cases.

**8.—Same—Constitutional Law—Law Construed—Interstate Commerce—Exemptions—Medicinal Purposes.**

The Acts of the Twenty-ninth Legislature, page 379, laws of 1905, prohibiting the solicitation of orders for the sale of intoxicating liquor in any territory where local option is in force, etc., is invalid because it makes penal all solicitations as sales for intoxicating liquors in local option territory, and does not except the sale by solicitors from other States under the laws of Congress regulating interstate commerce, and does not except the soliciting of sales of intoxicants for medicinal purposes.

**9.—Same—Constitutional Law—Rule of Construction.**

Where the proposed effect is not to be attained by striking out or disregarding words that are in the law, but by inserting those that are not now there, the whole of the law must fall together; and inasmuch as the Act of the Twenty-ninth Legislature, page 379, the laws of 1905, does not except the soliciting of orders for intoxicants from other States, or for medicinal purposes, the whole of the act is unconstitutional.

From Hays County.

Original application for habeas corpus for release from a commitment under an information charging petitioner with a violation of an Act of the Twenty-ninth Legislature, page 379, laws of 1905, with reference to soliciting orders for the sale of intoxicating liquors, etc.

The opinion states the case.

*Newton & Ward,* for relator.—On question of constitutional law article 16, sec. 20, Constitution of the State of Texas; Holley v. State, 14 Texas Crim. App., 505; Ex parte Brown, 38 Texas Crim. Rep., 295; Stallworth v. State, 16 Texas Crim. App., 345; Cooley's Con. Lim., 479.

*Howard Martin,* Assistant Attorney-General, *M. B. Templeton,* for the State.—Randle v. State, 42 Texas, 580; Bowman v. State, 40 S. W. Rep., 796; Smisson v. State, 71 Texas, 222.

DAVIDSON, PRESIDING JUDGE.—The last Legislature passed the following statute: "That if any person in any county, subdivision of a county, justice's precinct, city or town, in this State, in which the sale of intoxicating liquors has been prohibited by law, shall solicit or receive an order therein for the sale or delivery of any intoxicating liquor in such county, subdivision of a county, justice's precinct, city or town, he shall be deemed guilty of a misdemeanor, and shall be punished by a fine of not less than $50 nor more than $300, and by confinement in the county jail for any period not less than thirty days nor more than ninety days." Appellant was charged by complaint and information, in two counts, with the violation of this statute. He was arrested, and sued out the writ of habeas corpus before this court.

The first count in the information charged that J. S. Carroll was

conducting in the town of Maxwell, Caldwell County, an establishment for the sale of liquor; that local option was in force in Hays County on the 21st of August, 1905, and applicant was the agent of Carroll, and as such agent he solicited and received from Eli Hill, in Hays County, an order for the sale and delivery of one quart of whisky; that it was agreed between Hill and applicant that the order was to be forwarded from Hays County to Carroll, at his place of business at Maxwell; that Carroll reserved the right to reject or fill the order; that if he filled the order the whisky was to be. delivered to the American Express Company, a common carrier at Maxwell, in Caldwell County, to be transported by the express company to Hays County, and there delivered to the purchaser, Eli Hill; that when the liquor was delivered to the common carrier at Maxwell, it was then and there to become the property of Hill, and the express company was to transport the same as the agent of said Hill.

The second count charges that, on the 21st of August, 1905, applicant, in said County of Hays, did solicit and receive in said Hays County from Eli Hill an order for the sale and delivery in said Hays County, of one quart of whisky, the same being an intoxicant.

Under all the authorities in Texas the first count does not charge a violation of the law, even if the whisky had been delivered and reached its destination in Hays County. The allegations set out in the first count would constitute a sale at the point of shipment, had there been a contract and the goods shipped, and not at the point of destination. Bruce v. State, 36 Texas Crim. Rep., 53; Weldon v. State, 36 Texas Crim. Rep., 34; Keller v. State, 87 S. W. Rep., 669; James v. State, 45 Texas Crim. Rep., 592; 78 S. W. Rep., 951; Sedgwick v. State, 85 S. W. Rep., 813; Parker v. State, 85 S. W. Rep., 1155; Joseph v. State, 86 S. W. Rep., 326; Luster v. State, 86 S. W. Rep., 326; Sims' case, 87 S. W. Rep., 689; are directly in point in regard to the right of the principal to ratify or reject such orders. So under the order set out in the first count, if the sale had been consummated it would not have been in Hays County, but at Maxwell, Caldwell County, and that it is necessary to have a sale in the prohibited territory to constitute a violation of the local option law. We deem it unnecesasry to further discuss the first count of the indictment.

The second count charges that the order was solicited not only in Hays County, but the delivery was to occur in Hays County. We suppose this was intended to charge a state of case that would require the shipper to deliver the property in Hays County, and the property to remain his until it reached the consignee in the local option territory. In other words, that by the terms of the act in question, the Legislature intended only to prohibit the soliciting and taking of orders in the local option territory, when the contract was to be consummated by the sale and delivery of the goods in the local option territory. But the further question is still involved in a general way, that the Legislature intended to prohibit the soliciting of orders in local

option territory, where the ultimate object of the consummation of that contract was the sending of the goods into the local option territory, without reference to where the sale might be consummated, in or out of the local option territory.

It is not the law, if the party solicits or takes the order in a local option district to deliver intoxicants in such district, that it constitutes a sale. If this is the final termination of the matter, there would be no sale. There might not even be a contract for a sale. If the solicitation ended the transaction, there would be no contract. Why? Because the parties solicited either failed or declined to accept the terms offered by the party soliciting the order. If there was an acceptance and an order given, still there would be nothing but a contract to deliver or sell at some future period. This is not sufficient. Why? Because there must be a sale, and such sale must be within the prohibited territory in order to come within the provisions of article 16, section 20, of the Constitution. This section alone furnishes the authority for local option legislation, and limits the authority of legislation to the prohibition of sale "within the prescribed limits" where the law is operative. It is a well known rule, sanctioned by all legal authority that where the Constitution provides how a thing may or shall be done, such specification is a prohibition against its being done in any other manner. This is but the application of the familiar rule, that the expression of one thing is the exclusion of any other; and therefore is decisive of legislative authority. This doctrine was fully discussed in Holley's case, 14 Texas Crim. App., 516, and quite a number of subsequent cases. The recent case of White v. State, 85 S. W. Rep., 9, is strongly in point. See also Stallworth's case, 16 Texas Crim. App., 345; Ex parte Brown, 38 Texas Crim. Rep., 295; Stephens v. State, 85 S. W. Rep., 797, and numerous authorities already cited, supra. In White's case, supra, there was an agreement to sell and deliver the intoxicating liquor in the local option district, and the money was paid to the solicitor by the party from whom the order was sought. Before delivery of the goods, the solicitor of the order cancelled the contract, and returned the money to the would-be purchaser. Under this state of case, it was held not to be a violation of the law, because there was no consummation of the contract; that is, no sale had been made. The solicitation had only merged into a contract for the delivery of the goods. But the sale did not occur, that is the goods were not delivered. The writer did not participate in the decision in that case, and the report of the case shows his absence. It may be safely asserted that a solicitation of an order is not even a contract; that if accepted and merged into a contract, then it is not a sale, but simply an agreement to sell. It is nothing more than an executory contract, and by its very terms excludes the fact that a sale has been consummated. On the very face of the agreement the stipulations are for a sale at some future time. The act in question not only seeks to punish that which is not a sale, but provides a penalty for the doing

of an act which the law itself recognizes not to be a sale, and which, by the terms of the agreement cannot be a sale. The punishment denounced is for soliciting an order for the sale or for a delivery. This solicitation may be rejected, or if accepted, it is not necessary that it be executed in order to call for a punishment under the terms of the act in question. It excludes the idea that the intoxicant is delivered. The offense is complete by the terms of the law without a delivery, or even without a contract for delivery. A sale is not necessary. The party would be punished whether the sale was in fact consummated or not. This is so clearly in violation of the terms of the constitutional provision cited supra, that we deem it almost unnecessary to discuss it.

Again, the law is violative of the Federal Constitution and the Wilson Act of Congress regulating Interstate Commerce. The act in question makes no exception in favor of Interstate Commerce shipments or contracts. It punishes alike whether the solicitation is for State or interstate shipments. That it is violative of the federal laws cannot be questioned, in the face of a hundred years of decisions by the courts, federal and State. This, it occurs to us, would render the act void. See Western Union Tel. Co. v. State, 62 Texas, 630; Kimbrough v. Barnett, 93 Texas, 301; T. & P. Ry. v. Mahaffey, 11 Texas Ct. Rep., 858; State v. Hamey, 65 S. W. Rep., 946; 120 Ind., 575; 19 Fed. Rep., 679. To hold otherwise would impute to the Legislative and executive departments, a purpose to discriminate against the citizens of this State, in favor of those of other States, and an intent to punish our citizens for an act which would be entirely innocent if done by the citizens of other States. To hold that the Legislature intended such discrimination would not only be a reflection on that branch of the government as to their intelligence, and a criticism upon their sense of fairness and justice, but would give the law such a construction as would lead to absurd and unjust results. Courts will not do this, unless forced by the plain, certain and unambiguous language employed by the Legislature showing that such was their purpose. The terms of this act do not require that it be given such a construction. Certainly our Legislature never intended to pass a law, the operation of which would authorize citizens of other States to come ad libitum into local option territory, solicit orders, and turn the entire shipment of liquor into such territory over to liquor dealers outside the State, to the exclusion of our own people, and punish severely our citizens for an act which is entirely innocent if committed by the liquor dealers of other States. A construction of a law must be avoided which leads to injustice and absurdities. Under the interstate commerce clause of our Federal Constitution, our Legislature is powerless to prevent shipments of goods into this State from another State, under a contract between a citizen of this State and the citizens of the State from which the goods may be shipped. Exception was not made in the act under consideration in favor of parties resident outside the State; but the terms of the law are framed to cover all parties who undertake

to take orders in the prohibited territory, whether State or interstate. As directly pertinent to this question, see Western Union Tel. Co. v. State, supra. Being inoperative and unconstitutional as to interstate commerce, the terms of the law are so worded and constructed that this feature of it cannot be excluded, without rendering the whole act void. Therefore, the whole act must fall as being unconstitutional. We therefore hold, that the act is violative of article 16, section 20, of our State Constitution; and second, that it is violative of the Federal Constitution and Act of Congress regulating interstate commerce. So, in any event, and from any standpoint, this law is beyond legislative authority and cannot stand. The applicant is therefore ordered discharged from custody.

*Relator discharged.*

HENDERSON, Judge, will file reasons for concurring.
BROOKS, Judge, dissents.

ON REHEARING.

March 14, 1906.

HENDERSON, JUDGE.—The applicant was ordered discharged at the Tyler Term, and is now before us on motion for rehearing filed by the State. In connection with the motion respondent has filed an able brief, in which the propositions announced by the court in the original opinion are strenuously attacked; and it is urged that in consonance with correct legal principle, and the authorities bearing on the question, a rehearing should be granted and applicant remanded.

As we understand the act of the Twenty-Ninth Legislature (Laws 1905, page 379), it prohibits the solicitation of orders for the sale of intoxicating liquor in any territory where local option is in force, for the sale or delivery of said liquor in such territory, and this without regard to any sale in the territory. The original opinion held that said act was invalid, on two grounds: First, that the Constitution authorized the prohibition of sales only in a local option territory, and thus negatived any other authority on the part of the Legislature to make other police regulation. And, second, that the act of the Legislature as formulated, apprehended the solicitation of sales, lawful in themselves, and which the Legislature had no power to inhibit, and therefore the act was void. Respondent denies that article 16, section 20, of the Constitution is restrictive to sales alone, or that it denies to the Legislature the exercise of other police power in furtherance of and tending to aid the power given to the people in said article of the Constitution; and cites us to Bowman's case, 38 Texas Crim. Rep., 14; Randle's case, 42 Texas, 580; and Smisson v. State, 71 Texas, 222.

Bowman's case, in effect, holds that sales for sacramental and medicinal purposes were eliminated from the provisions of the Constitution prohibiting the sales of intoxicating liquor; that such sales were not within the evil contemplated being within themselves useful. The first, being

sales for sacramental purposes, and protected by another clause of the Constitution; and the latter was excepted as being necessary to the welfare of the people; that it was not necessary for the Legislature to except the same—the exception inhering in the Constitution itself; that the act of the Legislature was simply a legislative construction of the Constitution. Their construction was certainly not the exercise of more power than was given by the Constitution. Therefore, it was not a case of ultra vires, as stated in Bowman's case, supra. The Act of the Legislature is in accord with the rule laid down in 1 Blackstone Com. (Cooley's 4th ed.) page 60, and the illustration therein given. Rule 4 relating to interpretation of laws is as follows: "As to the effects and consequences, the rule is, that where words bear either none, or a very absurd signification, if literally understood, we must a little deviate from the received sense of them. Therefore the Bolognian law, mentioned by Puffendorf which enacted, 'that whoever drew blood in the streets should be punished with the utmost severity,' was held after long debate not to extend to the surgeon, who opened the vein of a person that fell down in the street with a fit." So that, in construing article 16, section 20, we simply eliminated the matter, as not within the evil contemplated. In the statute now before us, the solicitation of sales by drummers from other States is as much within the evil contemplated as sales by our own citizens. We cannot therefore hold that the Legislature intended to eliminate these under the rule above indicated. Nor is the Brown case, 38 Texas, 295, when rightly understood, authority in support of any contention made by respondent. See the opinion of this court in Ex parte Massey, decided at the Tyler Term. In the latter case it was shown that the cold-storage act was no part of the local option law, and had no bearing as to the sale of liquor: the prohibition of which alone was authorized by the Constitution. In that case, in speaking of the keeping of a cold storage as being violative of the local option law, the writer said: "A closer scrutiny of the question renders this proposition at least doubtful, as it is not a direct assault on the local option law, but appears to be outside of the law," which we think is clearly the case, and marks the distinction between said Brown case and the case at bar, which has a direct bearing as to the sale of liquor in local option territory, which is the matter of prohibition under our Constitution.

Respondent was not fortunate in the citation of the Randle case, inasmuch as the question as to the offering for sale of a lottery ticket, was not involved in that case. Randle was indicted for establishing a lottery, under the name of the Galveston Gift Enterprise Association, and the question was simply whether such institution was a lottery. So far as we have been able to discover, the court nowhere, even as dicta, holds constitutional the act of the Legislature which made it criminal, to offer a lottery ticket for sale. But we concede, if that question had been before the court, they should have so held. That case came under the Constitution of 1869, which was brought forward

from the Constitution of 1845, under which said prosecution was had. The article reads as follows: "No lottery shall be authorized by this State, and the buying and selling of lottery tickets within this State is prohibited." That was simply a limitation on the Legislature with reference to authorizing the establishment of lotteries within this State. The clause imparted no power to the Legislature; nor did it take away from the Legislature, any legislative power on the subject. In accordance with the general rule, as announced in respondent's brief, in the absence of restriction, the Legislature had plenary power over the subject. The same observations may be made with reference to Smisson v. State, 71 Texas, 222, cited by respondent. The court there held that· the power given in the Constitution to the Legislature to authorize the sale of school lands, did not by implication deny the power of the Legislature to authorize the leasing of the same. We heartily concur with the observation there made by Judge Stayton: "That a power, clearly legislative in its character, not expressly denied to the Legislature, ought not to be held to be denied by implication, unless its exercise would obstruct the exercise of a power expressly granted." Both of said cases were under a clause of the Constitution directly bearing on the authority and duty of the Legislature. In the last mentioned case, the Legislature unquestionably could have authorized the sale of school lands, in the absence of some constitutional inhibition. It was merely held in that case that the power expressed in the Constitution to make sale of such lands which the Legislature had before, did not deprive the Legislature of the power to make other disposition of such school lands not inconsistent with the granted power.

That is not the question here. In the case before us, the people had no inherent power to legislate on the subject of local option prior to the adoption of article 16, section 20. As early as the case of State v. Swisher, 17 Texas, 441, it was held, that the Legislature could not delegate to voters or the people the power to pass laws, in the absence of some constitutional provision authorizing this. Judge Lipscomb, who rendered the decision says: "But besides the fact that the Constitution does not provide for such reference to the voters to give validity to the acts of the Legislature, we regard it as repugnant to the principles of the representative form of government by our Constitution. Under our Constitution the principle of law making is that the laws are made by the people: not directly but by and through their chosen representatives. By the act under consideration this principle is subverted, and the law is proposed to be made at last by the popular vote of the people, leading inevitably to what was intended to be avoided; confusion and great popular excitement in the enactment of laws." This principle was reaffirmed in San Antonio v. Jones, 28 Texas, p. 19.

It was not until the adoption of article 16, section 20 in the Constitution of 1876, that power was given in the organic law, authorizing the delegation　of power to the qualified voters to enact local option

in the territory therein mentioned. That clause was amended in the Constitution of 1891; and both it and the original clause authorized the Legislature to enact a law whereby the qualified voters in said territory may determine by a majority vote from time to time whether the sale of intoxicating liquor shall be prohibited within the prescribed limits. No one will deny that this enactment was a delegation of authority to the voters of the territory named, to make a law adopting local option in such territory. The people or the voters of the locality did not have this before. The Legislature retained in full its power over the subject; but when the people spoke under this clause of the Constitution, the Legislature was deprived of its authority over the subject; and full authority, that is the authority expressed over the subject in said enactment, was delegated to the people, or the voters of the locality, who represent as to this matter the people of the territory. That power so delegated, expresses the method which the voters can pursue with regard to intoxicating liquors; that is, the voters of the locality are authorized to pass a law prohibiting the sale of intoxicating liquors within the local option territory. As we understand it, the whole subject matter is exhausted, nothing is left to regulate. The putting into operation of section 20 abolishes the liquor traffic altogether, leaving nothing to the exercise of police power. Whatever power can be exercised must be with reference to sales, and them only. If the Legislature had undertaken to authorize the people to vote on the question as to whether the people would penalize an offer to sell intoxicating liquors, it would not have been in execution of the delegated power. It would have been ultra vires. No more was the Legislature authorized to couple such a provision with the prohibition of sale: much less could the Legislature interfere and of themselves interpolate a provision making penal the offer to sell intoxicating liquors. The people were authorized to vote only upon one question, that was the prohibition of sales of intoxicating liquors. The power granted was exclusive, and the Legislature could make penal only that which the voters of the locality were authorized to adopt. The provision of our Constitution on the subject of local option was intended to prescribe a method of dealing with the question, and to exclude any other rule or method, at least so far as local option territory is concerned. The application of this doctrine was recognized in Holley's case, 14 Texas Crim. App., 505, referred to in the original opinion. In that case, the question of gift was involved, and it was there held that the Legislature could not authorize, or if authorized by the Legislature, the voters of the locality could not pass a law prohibiting the gift of intoxicating liquors. It was there contended that the inhibition of a gift was in aid of the main proposition, to wit: the prevention of sales of intoxicating liquor. The court there quotes with approval what Judge Cooley says on this subject, to wit: "It is established as a general rule that when the Constitution gives a general power or enjoins a duty, it also gives by implication every particular power necessary for the exer-

cise of the one or the enjoyment of the other. The implication under this rule, however, must be a necessary, not a conjectural or argumentative one. And it is further modified by another rule, that where the means for the exercise of a granted power are given, no other or different means can be implied as being more effective or convenient.  *  *  * Another rule of construction is, that when the Constitution defines the circumstances under which a right may be exercised or a penalty imposed, the specification is an implied prohibition against legislative interference, to add to the condition or to extend the penalty to other cases.  (Cooley's Const. Lim., 4 ed., p. 78.)"  The court further say: "This rule is decisive of the controversy. The Constitution defines the circumstances under which the people may prohibit the sale of intoxicating liquors under legislative enactment, and the Legislature have attempted to extend the prohibition to a gift, and have imposed a penalty for giving away intoxicating liquors. This they had no authority to do.  On the contrary the Constitution having specified the bounds within which they were to act, it was a direct assumption and usurpation of unwarranted power to go beyond those bounds." Steele v. State, 19 Texas Crim. App., 425; Dawson v. State, 25 Texas Crim. App., 670. This principle has been since followed, as the established doctrine in this State. Even in the act prohibiting blind tigers, it was held that there had to be a sale before the law with reference to blind tigers became operative. Segars v. State, 51 S. W. Rep., 211. And so it has been held that the prescription of a physician, without the accompanying sale is inoperative. Williams v. State, 10 Texas Ct. Rep., 979.

On the second proposition we hold that the act, as formulated, renders it invalid; that is, the act is in its terms comprehensive, and makes penal all solicitations of sales for intoxicating liquors, in local option territory—there is no exception as to the sale by solicitors from other States, under the laws of Congress regulating interstate commerce; and there is no exception as to soliciting sales for medicinal purposes. All of these sales are lawful sales in local option territory. Sedgewick v. State, 85 S. W. Rep., 813; Snearley v. State, 40 Texas Crim. Rep., 507.

In this connection we observe as a matter of surprise that counsel for respondent contend that the soliciting of the sale of liquor by persons representing some house situated in another State, does not come within the laws governing interstate commerce; that is, the contention is that soliciting the sale of goods is not interstate commerce. The authorities are all one way on this question. See 17 Amer. & Eng. Ency. of Law, p. 64, notes 9 and 10; McCall v. Cal., 196 U. S., 104. And in Robbins v. Shelby Taxing Dist., 120 U. S., 497, the court say: "The negotiations of sales of goods which are in another State, for the purpose of introducing them into the State in which the negotiation is made, is interstate commerce.

Now, we apprehend it will be conceded, as stated above, that sales

or solicitations or offering for sale of intoxicating liquor in local option territory, is legitimate as interstate commerce, and for medicinal purposes under the rules prescribed by our Legislature. It will also be admitted that there are no terms in the act, excepting these sales from its provisions—that is, the act is all embracing, and according to its letter makes such sales penal. Now, there is a line of decisions which authorize us to reject certain portions of an act, which are unconstitutional, and retain as valid the constitutional portions where the act is severable. But here we have no exceptions or clauses relating to these legal sales, in the shape of provisos or otherwise. So that, in order to validate the act, we are asked to interpolate the exceptions, and then reject them, and hold valid the penalizing of soliciting sales of intoxicating liquor, over which the Legislature had power to punish. This cannot be done. We quote from Sutherland on Stat. Const., sec. 173, as follows: "In United States v. Reese, 92 U. S., 214, it was held that the power of Congress to legislate at all upon the subject of voting at State elections rests upon the fifteenth amendment to the Federal Consitution, and can be exercised by providing a punishment only when the wrongful refusal to receive the vote of a qualified voter at such election is because of his race, color or previous condition of servitude. A congressional enactment not confined in its operation to unlawful discrimination on account of race, color or previous condition of servitude transcends the constitutional limit, and is unauthorized. Waite, C. J., said, 'We are therefore directly called upon to decide whether a penal statute enacted by Congress, with its limited powers, which is in general language broad enough to cover wrongful acts without as well as within the constitutional jurisdiction, can be limited by judicial construction so as to make it operate only on that which Congress may rightfully prohibit and punish. For this purpose we must take these sections of the statute as they are. We are not able to reject a part which is unconstitutional and retain the remainder, because it is not possible to separate that which is unconstitutional, if there be any such, from that which is not. The proposed effect is not to be attained by striking out or disregarding words that are in the section, but by inserting those that are not now there. Each of the sections must stand as a whole or fall altogether. The language is plain. There is no room for construction, unless it be as to the effect of the Constitution. The question, then, to be determined is, whether we can introduce words of limitation into a penal statute so as to make it specific, when, as expressed, it is general only. It would certainly be dangerous if the Legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government. The courts enforce the legislative will when ascertained, if within the constitutional grant of power. * * * To limit this statute in the manner now asked would be to make a new law,

not to enforce an old one. That is no part of our duty.' This view has been repeatedly approved in subsequent cases." U. S. v. Harris, 106 U. S., 629; Trade Mark cases, 100 U. S., 82; Va. Coupon cases, 114 id., 305; Baldwin v. Franks, 120 U. S., 678; James v. Bowman, 190 U. S., 127. In this case the principle is laid down that penal legislation broader than the mandate cannot be sustained, the court having no power to amend or reform it. The court here says: "It is urged, however, that the general description of the offense included the more limited one, and that the section was valid where such was in fact the cause of denial." The court in following the line of decisions mentioned, says: "We deem it unnecessary to add anything to the views expressed in these opinions. We are fully sensible of the general great wrong results from bribery at elections and do not question the power of Congress to punish such offenses, when committed in respect to the election of federal officers. At the same time it is all important that the criminal statute should define clearly the offense which it purports to punish, and that when so defined it should be within the limits of the power of the legislative body enacting it. Congress has no power to punish bribery at all elections. The limits of its power are in respect to elections in which the nation is directly interested, or in which some mandate of the national Constitution is involved, and the courts are not at liberty to make a criminal statute broad and comprehensive in its terms (and in these terms beyond the power of Congress) and change it to fit some particular transaction which Congress might have legislated for if it had seen fit." We believe these citations are peculiarly applicable to the question we are discussing: especially under our statute with reference to offenses, which requires that all offenses be defined. It is not for the court to legislate into a statute provisos or exceptions which may be surmised the Legislature intended to put there and did not, for the purpose of then judicially legislating such provisos out of the statute.

We see no reason to overturn the decisions of this court, since the Holley case, which hold that article 16, section 20, affords the method by which local option can be adopted in localities. That method is the prohibition of the sale of intoxicating liquors in such territory, and can only be put into force by a vote of the majority of the voters in such locality; and the Legislature is not authorized to submit to them any other issue than that marked out by the Constitution. That is exclusive and exhaustive. There is nothing reserved to the Legislature, its only function being to regulate how the vote shall be taken on this question, and to pass laws for the punishment of the sale of intoxicating liquor in violation of the law, which the people have made. But if it should be conceded that the Legislature had the power in the first instance to punish the solicitation of a sale of intoxicating liquor in local option territory without submitting it to a vote of the people in such locality, then, as we have shown, it did not pass a law legal in form, and capable of enforcement.

The motion for rehearing is accordingly overruled. *Overruled.*