SLIM EDMANSON v. THE STATE.

No. 659. Decided October 11, 1911.

Rehearing granted January 3, 1912.

**1.—Occupation—Intoxicating Liquors—Taking Orders—Bill of Exceptions.**

Where the bills of exception did not point out the objection to the introduction of the orders of the Commissioner's Court putting prohibition in force, etc., the same could not be considered on appeal.

**2.—Evidence—Bill of Exceptions.**

Where the evidence complained of in the motion for new trial was not excepted to at the time, the same can not be reviewed on appeal.

**3.—Same—Information.**

Where, upon trial of pursuing the occupation of taking orders for intoxicating liquors in local option territory, the complaint and information charged an offense under the statute, the same was sufficient.

**4.—Same—Name of Defendant.**

Where there was no suggestion in the record on appeal that defendant had any other or different name than that alleged in the information and complaint, there was no error.

**5.—Same—Constitutional Law—Police Power.**

The police power of the Legislature is not taken from it by section 20, article 16, Constitution of Texas, and it is proper for it to pass laws in aid of the enforcement of the local option law. Overruling Ex parte Massey, 49 Texas Crim. Rep., 60. The Act of the Thirty-first Legislature, p. 53, taxing the occupation of the business of selling or offering to sell any intoxicating liquors by soliciting or taking orders therefor in local option territory is constitutional. Davidson, Presiding Judge, dissenting.

**6.—Same—Police Power—Legislative Power.**

The police power is not abrogated by the local option law as provided in the Constitution, but it is the duty of the Legislature to pass all such remedial statutes as may be necessary to enforce the will of the people. Fitch v. State, 58 Texas Crim. Rep., 366, and other cases.

**7.—Same—Case Stated—Local Option—Constitutional Law.**

Where, upon trial of the offense of pursuing the occupation of taking orders for intoxicating liquors in local option territory, the evidence showed that the defendant was running a cold drink stand, etc., and in the meantime took orders for intoxicating liquors in local option territory, he was violating the Act of the Thirty-first Legislature, p. 53, and it was in the province of the Legislature to pass laws regulating the business or occupation of taking such orders under such circumstances; and this is a general law and applies to all persons as a class under the same conditions, and does not violate the Constitution in any manner.

**8.—Same—Uniform Taxation—Police Regulation—Tax for Revenue.**

The Act of the Thirty-first Legislature, p. 53, does not violate article 8, section 2 of the Constitution, which provides that all occupation taxes shall be equal and uniform upon the same class of persons within the limits of the authority levying the tax; besides, it is a police regulation and not a tax for revenue. Neither is said Act discriminatory or invalid because of excessive levy for licensing the occupation.

**9.—Same—Constitutional Law—Sale—Local Option.**

The Act of the Thirty-first Legislature, p. 53, is constitutional under article 16, section 20, and the powers of the Legislature are not circumscribed by said article of the Constitution to merely prohibit the sale of intoxicating liquors in local option territory, but it may and should pass such laws in aid of the prohibitory law wherever adopted to make the same effective.

**10.—Same—Constitution of the United States.**

The Act of the Thirty-first Legislature, p. 53, prohibiting the taking of orders, etc., for intoxicating liquors in local option territory does not contravene the Constitution of the United States, and is in the police power of the State. Overruling Ex parte Massey, 49 Texas Crim. Rep., 60. Davidson, Presiding Judge, dissenting.

**11.—Same—Tax Levy—Commissioners' Court—Special Term.**

The Commissioner's Court can levy no county tax except at a regular term of the court when all the members of the court are present; and where the defendant was prosecuted for pursuing the occupation of selling intoxicating liquors or taking orders therefor in local option territory, and was fined for failure to pay both the State and county tax, and the record showed that the county tax was levied at a special term of the Commissioner's Court, the judgment could not be reformed, but must be reversed.

Appeal from the County Court of Lampasas. Tried below before the Hon. M. M. White.

Appeal from a conviction of unlawfully pursuing the occupation of taking orders for intoxicating liquors in local option territory; penalty; a fine of $6,000 and ninety days confinement in the county jail.

Leaving out formal averments the information charged the defendant as follows: that heretofore, to wit, on the 28th day of September, 1908, in the county of Lampasas, in the State of Texas, an election in accordance with the laws of the State of Texas was held under authority of an order of the Commissioners Court of the said Lampasas County, theretofore duly made and published, to determine whether or not the sale of intoxicating liquors should be prohibited in the said county of Lampasas, and the qualified voters at the said election did then and there determine that the sale of intoxicating liquors should be prohibited in the said county of Lampasas, and thereupon the Commissioners Court of the said county did pass an order declaring the result of the said election and prohibiting the sale of intoxicating liquors in the said county, and the county judge of the said county caused the said order declaring the result of ·the said election to be published as required by law. Thereafter, to wit, on or about the 21st day of December, 1909, one Edmanson, called and known as Slim Edmanson, did unlawfully engage in and pursue the business and occupation of offering for sale intoxicating liquors

in Lampasas County, Texas, by taking orders therefor in said county. The said business and occupation being one taxed by law, in this, to wit, the said Slim Edmanson did fail, refuse, and neglect to pay the taxes and take out a license to pursue the business and occupation of offering for sale intoxicating liquors by taking orders therefor as provided by law, and the taxes then and there due by him to the State of Texas upon said business and occupation was the sum of $4,000, and the taxes then and there due by him to the said county of Lampasas upon said business and occupation was the sum of $2,000, the said taxes thus due the. said Lampasas County theretofore being duly levied by the Commissioners Court of said county, against the peace and dignity of the State. ·

*A. L. Curtis* and *R. L. H. Williams,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—In this case appellant was charged by information and complaint with the offense of pursuing the occupation of taking orders for intoxicating liquors in Lampasas County, Texas, when prohibition was in force in said county. He was tried and convicted, and his punishment assessed at a fine of $6,000 and imprisonment in the county jail for ninety days.

There were some twenty witnesses introduced by the State who testified that they went to a cold drink stand run by appellant in Lampasas and gave him orders for intoxicating liquors. That he would telephone the orders to a liquor dealer at Belton, Texas, and in the majority of instances the whisky would come on the next train. In some instances the whisky would be shipped in the name of the parties ordering it, and they would get it from the depot. Others says appellant would deliver it to them at his place of business. R. L. Furness testified he was in the saloon business at Belton, and a member of the firm of Warren & Furness; that appellant commenced to order whisky from that firm in September and continued until January. That in September, October and November his orders averaged about ten dollars per day—may have been more or less. In the month of December he ordered between four and five hundred dollars worth of whisky. Appellant collected the money from all those from whom he took orders and settled with the liquor dealers.

Under these facts we think it was amply shown that appellant was pursuing the occupation of taking orders for intoxicating liquors, and the evidence showing that prohibition was in force in Lampasas County, the judgment must be affirmed unless the information is invalid under some of the grounds stated in the motion to quash the information and complaint. Before discussing this we will dispose of the other questions relied on in the motion for a new trial.

In bill of exceptions No. 2 appellant states no reason why the or-

ders of the Commissioners Court putting prohibition in force in Lampasas County were not admissible in evidence; and bill No. 3 states no reason why the order levying a county occupation tax was not admissible, merely stating all these orders were admitted over appellant's objection, to "which action and ruling of the court the defendant then and there excepted." All of the bills of exception are in this condition, and under an unbroken line of authorities this court has held that we could not consider bills of exception unless the grounds of the objection or exception are specifically stated.

Neither can we consider the ground in the motion complaining of the testimony of the witness Smallwood. The record contains no bill, and there is nothing to show that objection was made except what is stated in the motion for a new trial. This has always been held insufficient, the fact that objection was made not being verified by the judge's signature.

This brings us to the motion to quash the information on the various grounds stated in the motion. There is a bill of exceptions in the record to the action of the court in overruling this motion, and it is brought forward also in the motion for a new trial. The motion raises the questions of the constitutionality of the law under which appellant was prosecuted, and the validity of the information. The motion reads as follows: "Now comes the defendant, in the above styled and numbered cause, and moves the court to quash and hold for naught the complaint and information in this cause filed, for the following reasons, viz.: 1st. Because the said complaint and information does not charge any violation of the laws of the State of Texas. 2d. Because said complaint and information does not sufficiently charge that the local option law was in full force and effect in Lampasas County, Texas, at the time of the alleged commission of the offense charged in said complaint and information. 3d. That said complaint does not charge that local option was, and is, in full force and effect, but only states that affiant has good reasons to believe and does believe that there was a local option election held in Lampasas County, Texas, and that at said election the majority of the votes cast was for local option, and that afterwards the result of same was published, etc., and does not aver in positive terms that local option was in full force and effect at the time of the alleged commission of the said offense charged in said complaint and information. 4th. Said complaint charges that one Edmanson, commonly known as Slim Edmanson, did commit the offense charged in said complaint and information, there being no allegation as to defendant's true name or initials, not being known to the affiant, or to the pleader, or that any diligence had been exercised by either the affiant or the county attorney to ascertain the name of said defendant. That the defendant at the time of the alleged commission of said offense lived in the town of Lampasas, in Lampasas County, Texas, a distance of not more than two or three hundred yards from the court-

house in said town of Lampasas, and that upon the least exercise of diligence his first name could have been ascertained, either by affiant or by the county attorney who drew the complaint and information. 5th. That said law under which said complaint and information was drawn is unconstitutional in that said law does not comply with the Constitution of this State, which requires the tax levied to be uniform, and provides that said tax be not excessive.  6th. That said law under which defendant stands charged is not in keeping with the Constitution of this State, in that said law is discriminative and is legislation against a particular trade or calling and is in restraint of trade.  7th. That said law is violative of the Constitution of this State in that it is in substance class legislation.  8th. That said law is unconstitutional, in that the penalty affixed is excessive in the extreme.  9th. That said law under which the defendant stands charged is not in keeping with that clause of the Constitution which requires that all taxes be uniform.  10th. That the said law under which defendant stands -charged is of no force and effect, and the same is unconstitutional, in that said law undertakes to license a business and occupation which is expressly prohibited by the statute law of this State."

The first three grounds are untenable.  If chapter 30 of the Act of the Thirty-First Legislature is valid, the complaint and information charges an offense, and under articles 257 and 466 of the Code of Criminal Procedure, prescribing the requisites of a complaint and information, the charge is specific enough.

The fourth objection that the information and complaint charge that "one Edmanson, commonly known as Slim Edmanson, did," etc., is insufficient in that it is not charged that appellant's true name was unknown.  This question is not entirely free from difficulty, but as in the body of the complaint and information he is named as Slim Edmanson, and the witnesses who knew him all speak of him as being named Slim Edmanson, one witness, J. R. Throckmorton, testifying he had known defendant Slim Edmanson all his life, we have concluded the court did not err in overruling the motion on this ground.  There is no suggestion in the record, or in the evidence, that he has any other or different name than that of Slim Edmanson.

The last six grounds complain of the unconstitutionality of the law in that it is discriminative, that it is class legislation, that the penalty affixed is excessive, that it is violative of that clause of the Constitution which provides that taxation shall be uniform, and that it undertakes to license a business or occupation which is prohibited by law.

The constitutionality of the laws passed by the Legislature in aid of the enforcement of prohibition wherever adopted has been discussed in a number of opinions by the courts of this State, and

expressly so in this court. In the case of Ex parte Brown v. State, 38 Texas Crim. Rep., 295, it is held: "Whatever may be said as to the power of the Legislatures of other States, with no express provisions of their Constitutions on this subject, to legislate in regard to the liquor traffic under the general police power, the same does not apply with us. We have an express provision on the subject, and that provision was intended to prescribe a method of dealing with the question, and to exclude any other rule or method, at least so far as local option territory is concerned."

This rule is approved in Stephens v. State, 73 S. W. Rep., 1056, in which it is held that the law prohibiting a physician from giving a prescription without an examination of the patient and certifying to his condition, is unconstitutional, the court saying, "the Legislature has not been authorized by our Constitution to prohibit the giving of prescriptions;" again holding that the Legislature is powerless to do more than prohibit the sale, and that all remedial laws in aid of the enforcement of the prohibition law are unconstitutional and void.

In Ex parte Massey, 49 Texas Crim. Rep., 60, 92 S. W. Rep., 1086, the Brown case, supra, is again approved, this court saying: "This section (art. 16, sec. 20), alone furnishes the authority for local option legislation, and limits the authority of legislation to the prohibition of sale within the prescribed limits where the law is operative."

If these three decisions announce correctly the law, it necessarily follows that appellant's contention is correct, and the law in question is unconstitutional. But this is only one line of decisions by this court. There is another which holds that the police power of the State is not taken from it by section 20 of article 16, and holds that it is not only proper for the Legislature to pass laws in aid of the enforcement of the prohibition law, but it is its duty to do so.

In the case of Williams v. State, 81 S. W. Rep., 1209, the case of Stephens v. State, supra, is specifically overruled, and it is held that "if the proof shows that the doctor has not made a personal examination of the applicant for the prescription, this would authorize a conviction, provided a sale was obtained in either instance under said prescription. Wherein these views conflict with the McLain and Stephens cases, they are overruled," thus holding that the Legislature had the power to make the giving of prescriptions an offense in prohibition districts.

In the case of Ex parte Rippy, 44 Texas Crim. Rep., 72, this court held: "However, relator contends that the provisions of our local option law are violative of certain provisions of the Federal Constitution. . . . . If it could be said that any citizen or class of citizens has a vested interest in the liquor traffic, there might be some ground for the contention; but all of the authorities, except perhaps those from Kentucky, to which he refers, proceed upon the proposition that

there is no such vested right—*the liquor traffic is peculiarly within the police power of the State,*" thus limiting, if not in fact overruling the Brown case; and in the concurring opinion in the Massey case, supra, Judge Henderson holds that the Brown case has been misconstrued, and that it did not hold that police power of the State had been limited by section 20, article 16; and in Ex parte Massey, 49 Texas Crim. Rep., 60, 92 S. W. Rep., 1083, Judge Henderson holds that if such construction is placed on the Brown case, it is wrong, and the court holds: *"We do not understand that the police power of the State is abrogated or suspended in local option territory,* or that the State laws which are applicable to such territory are inoperative," which in effect overrules the Brown case, as is stated by Judge Davidson, who files a dissent on that ground.

In Snearly v. State, 40 Texas Crim. Rep., 514, this court holds: "The adoption of local option does not abrogate the right of the Legislature to subsequently pass laws taxing the sale of intoxicants in the local option precinct, under given conditions; and a party before selling intoxicants for medicinal purposes under the provisions of the local option law, must first procure a license as is provided by law." This case specifically overrules the case of Ex parte Bains, 39 Texas Crim. Rep., 62. This is followed in the case of Sneed v. State, 55 Texas Crim. Rep., 583. In the case of Fitch v. State, 58 Texas Crim. Rep., 366, the decisions of this court are discussed at length, and it is held: "We, therefore, hold that the power to legislate for the efficient enforcement of local option laws is not taken away from the Legislature after the adoption of local option, but only for those offenses that are defined and punishment attached which were in existence at the time the people adopted local option; and that if new offenses grow out of the violation of this law that can not be covered by the laws already in existence, the duty and obligation rests upon the Legislature to see that efficient laws are passed to meet each new emergency. If an element should invade local option territory opposed to the enforcement of local option laws and should throw its force against the will of the people and by its craft and cunning devise schemes and means to defeat the purpose of the law and invent a method whereby, through the forms of law, they should evade the crime that had been defined by the Legislature, it would be a monstrous doctrine to hold that the Legislature is powerless to enact legislation defining offenses and prescribing penalties for the new conditions that may arise because the same was not an offense at the time that local option was adopted. As said by this court in Ezzell v. State, 29 Texas Crim. App., 521: 'The Legislature is not only empowered to pass such laws, but it is obligatory upon said body to pass same and make them effective. It is not a question of delegated power, but is a command to that body to enact laws for the purpose and object stated in said provision of the Consti-

tution.' " See also Tachini v. State, 59 Texas Crim. Rep., 55; Joliff v. State, 53 Texas Crim. Rep., 61, and cases there cited.

Thus it seems that in this court we have two lines of decisions, one holding that by the adoption of the local prohibitory law the police power is abrogated and suspended in such territory, as announced in the case of Brown v. State, supra; the other holding that the police power is not abrogated by the adoption of such law, but it is the duty and command of the Constitution, that the Legislature pass all such remedial statutes as may be necessary to enforce the will of the people as expressed at the ballot box, this court saying in the Fitch case "it would be monstrous doctrine to hold the Legislature powerless" to remedy evils as they arise. The writer's opinion is expressed in the more recent opinions in the cases of Dozier v. State, 62 Texas Crim. Rep., 258, 137 S. W. Rep., 679; Slack v. State, 61 Texas Crim. Rep., 372, 136 S. W. Rep., 1076, and cases there cited, and we deem it unnecessary to review the matter further at this time, but in view of the insistance in this case we have carefully reexamined the opinions and the reasons therein expressed, and we find that all the later cases in our court hold that the police power is not abrogated by the local option law, and we are further strengthened in our own conclusion by two opinions of our Supreme Court. In the case of Ex parte Dupree, 101 Texas, 150, the Supreme Court, speaking through Chief Justice Brown, holds:

"Section 20 of article XVI of the Constitution of this State is in this language: 'The Legislature shall at its first session enact a law whereby the qualified voters of any county, justice precinct, town, city (or such subdivision of a county as may be designated by the Commissioners Court of said county), may by a majority vote determine from time to time whether the sale of intoxicating liquors shall be prohibited within the prescribed limits.' The objection that the law under investigation goes beyond the limits prescribed by the Constitution is based upon the idea that the people of the particular locality vote upon and adopt the local option law itself, whereas by the plain and unmistakable terms of the Constitution the Legislature is required simply to enact a law by which the people of the territory or subdivision may vote upon the question of whether the sale of intoxicating liquors shall be prohibited within that territory. The Legislature could have enacted the law simply submitting this question to the vote of the people and subsequently have enacted the law which they did in order to carry the result of that vote into effect; or the Legislature might have, as they did, enact a general law upon the subject with a provision that it should become operative in any of the subdivisions named in the Constitution when the people had voted in favor of prohibiting the sale of intoxicating liquors within that subdivision. The Constitution does not require the Legislature to submit to the vote of the people the law which is necessary to

enforce prohibition, and it has not been done; that is a proper subject for legislative action. It has been held in this State that the Legislature can not go beyond the limits of the Constitution and prohibit the giving away of liquors within the prescribed territory, but that does not in the least interfere with nor limit the power of the Legislature to enact all suitable and necessary laws for the enforcement of the will of the people on that subject. The law in question is not subject to the objection urged."

Again, the Supreme Court says in the case of Dupree v. State, 102 Texas, 455: "The purpose of the prohibition law is to prevent the thing prohibited, and this provision of the Constitution (art. 16, sec. 20), prescribes no scheme of legislation by which that is to be done, but leaves the choice of methods to the law-making power. There is nothing whatever in the provision which in our opinion should be construed as denying the power to prevent the sales which are prohibited by any legitimate remedies appropriate to that end. Prevention of crime is one of the objects to which most anxious thoughts, and the most constant efforts of thoughtful legislators are directed, and the dealing with the steps preparatory to commission is a favorite method." Judge Williams discusses the question at length, and cites authorities, which are here referred to.

The evidence in this case shows that appellant was running a cold drink stand and confectionery on the north side of the public square in Lampasas, in a room adjoining a restaurant. He took orders for intoxicating liquors from all who applied. Some of the liquors he had shipped in the name of the person giving the order; in other instances he delivered the liquors across the counter in his place of business. Such places, experience has shown, are fruitful sources for violation of the law, and the regulation or suppression of them would be of material aid in the enforcement of the prohibition law, and we hold that it was in the province of the Legislature to pass laws regulating the business or occupation of taking orders under such circumstances; and the law is a valid exercise of the police power, unless in conflict with some other provision of the Constitution. That the law is a general law within the meaning of our Constitution has frequently been decided by this court. Joliff v. State, 53 Texas Crim. Rep., 61; Logan v. State, 54 Texas Crim. Rep., 74; Smith v. State, 54 Texas Crim. Rep., 298; Wallis v. Williams, 101 Texas, 395.

In Ex parte Massey, 49 Texas Crim. Rep., 60, 92 S. W. Rep., 1086, it is held that chapter 64, Act of Twenty-Ninth Legislature, regulating the storing of intoxicating liquors in local option districts, is not a local but a general law within the meaning of article 3, sections 56 and 57 of the Constitution.

In Green v. State, 49 Texas Crim. Rep., 380, 92 S. W. Rep., 847, it is held that the statute regulating the practice of pharmacy, and applying only to druggists or pharmacists plying their vocation in towns of one thousand inhabitants or more, applying to all persons

as a class under the same conditions, is a general and not a special statute, and not unconstitutional.

In Ex parte Dupree, 101 Texas, .150, 105 S. W. Rep., 493, the Supreme Court holds that the statute which declares the keeping of intoxicating liquors, etc., for sale within local option districts to be a nuisance, is valid under the Constitution of this State.

So in this case the terms of the Act apply to all persons as a class, under the same conditions, and is not discriminatory, and is not a special or local but a general statute within the meaning of our Constitution. Neither is the statute unconstitutional on the ground that it violates article 8, section 2, of the Constitution, which provides that "all occupation taxes shall be equal and uniform upon the same class of persons within the limits of the authority levying the tax. Said statute exempts no person from its operation, and levies the same tax upon all persons pursuing the occupation in local option territory. A tax levied on druggists selling intoxicating liquors in local option territory has been sustained by this court. (Snearley v. State, 40 Texas Crim. Rep., 507.) This is a police regulation and not a tax for revenue, and is fully discussed in the case of Ex parte Tom Flake, decided at this term of court and not yet reported.

In the case of Thompson v. State, 17 Texas Crim. App., 253, an occupation tax levied . on Police Gazette and similar publications, is .held valid. The court says:

"What class of subjects is embraced in this law? Its language plainly answers the question; 'the illustrated Police News, Police Gazette, and other illustrated publications of like character.' Whatever the publication may be, if it be illustrated, and of like character with the two named publications, it is included in the class of publications made subject to the tax.' This character of publications constitute a particular class under the law, distinct from other publications, the class being known and determined by the characteristic features of the two publications ˙ named as examples. It is immaterial what may be the number of publications, whether few or many, which come within this class, still, if the tax levied reaches all belonging to the particular class, it is not obnoxious to the objection that it is not equal and uniform. It is only when individuals of a class ·are singled out for exemption that this objection can obtain."

In the case of Gaar v. Shannin, 52 Texas Civ. App., 634, 115 S. W. Rep., 361, the Court of Civil Appeals holds: "Acts of the Twenty-Ninth Legislature imposing a tax on domestic and foreign corporations are not invalid as discriminating in favor of domestic corporations subject to a less tax, the classification being based on legitimate distinctions, and the burden being equal within the class."

In Elting v. Hickman, 72 S. W. Rep., 700, the Supreme Court of Missouri held: "It is also said that sections 17 and 18 of the Act provide˙ for the levying an extra tax in these road districts; that sec-

tion 17 provides for levying taxes on property for road purposes of not less than ten nor more than twenty cents on $100 of assessed valuation; that section 18 provides for a special poll tax on all inhabitants of the special road district between twenty-one and sixty years of age of $2.50, while in all that part of the county not embraced in special road district the age is between twenty-one and fifty, the assessment is not less than $2 nor more than $4, while section 3 of the Constitution, supra, provides that 'all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and all taxes shall be levied by general laws.' The Act in question does not discriminate in the levy of a poll tax in the districts organized under it, but is uniform upon the same class within the territorial limits of the authority levying the tax, to wit, upon every male inhabitant in said district not within the limits of an incorporated town or city of the third or fourth class having a special charter. 'The only prohibition in the section being discussed is that which forbids inequality—favoritism—to be exercised in imposing taxes upon the "same class of subjects." So long as this is not done, the Constitution is not infringed, nor the rules of uniformity and equality violated.' "

Neither do we think the Act invalid because of excessive levy or charge for licensing the occupation. It is a police regulation and not a tax. The Federal Court, the Court of Civil Appeals, and this court have sustained an Act levying a tax of five thousand dollars on persons and corporations pursuing the business of delivering C. O. D. shipments of intoxicating liquor. The courts of this State sustained a license fee or tax of twelve hundred dollars on tenpin alleys, and numerous other instances might be cited where the object and purpose was not revenue, but a regulation. The question of taxation, licensing and regulating occupations are matters peculiarly within the legislative branch of the government, and if in their judgment a given occupation is hurtful to the best interests of the State, or tends to the corruption of or affects the health or morals of its citizenship, it is a matter within their discretion, so long as their action is not arbitrary or unreasonable, and so long as it acts within the powers delegated to them, the courts will not interfere.

This disposes of all the questions raised by appellant, but inasmuch as the court, in Ex parte Massey, 49 Texas Crim. Rep., 60, 92 S. S. W. Rep., 1086, held an Act prohibiting the soliciting of orders for intoxicating liquors unconstitutional on different grounds than here raised, we will discuss that case, for if the Act is unconstitutional on any ground, the appellant ought not to suffer punishment. That paragraph of the opinion holding the Act unconstitutional on the ground that the Legislature was limited to prohibiting a sale, has already been discussed herein. All of the late decisions of this court, the Supreme Court, and the Court of Civil Appeals have held that the powers of the Legislature are not circumscribed by article 16,

section 20, to merely prohibiting the sale, but it may and should pass such laws in aid of and to render effective the prohibitory law wherever adopted. Whenever it is sought to nullify the law by some system or device, or evasion, it is the duty of the Legislature to remedy the evils by legislation as they arise.

The other contention is, that the law is violative of the Federal Constitution, and that the Legislature, if aware of this fact, would not enact the law, for it would impute to the legislative and executive departments a purpose to discriminate against the citizens of this State in favor of those of other States and an intent to punish our citizens for an act which would be entirely innocent if done by citizens of other States. In Ex parte Massey, 92 S. W., 1086, in holding the act violative of the Federal Constitution, it was said: "To hold that the Legislature intended such discrimination would not only be a reflection on that branch of the government as to their intelligence, and a criticism upon their sense of fairness and justice, but would give the law such construction as would lead to absurd and unjust results." When the court in the Massey case, supra, declared this law unconstitutional, the Legislature again shortly thereafter passed another law, not exactly in the terms of the first Act, but having the same object and purpose in view, that is, to regulate and prohibit a person from pursuing the occupation of taking orders for intoxicating liquors in territory where prohibition has been adopted. So we must conclude that the Legislature intended, if the Act can not be made to apply to interstate shipments, to regulate and control such occupation within this State so far as it lay in its power. At least it was intended to stop the solicitation of an order which could be phoned across the boundary of the county or precinct and the intoxicating liquor received and delivered within an hour or so or on the same day. In this case the evidence shows appellant was a resident of Lampasas, doing business there, and pursuing the business or occupation of taking orders for intoxicating liquors, telephoning such orders to Belton, in many instances the liquor being received and delivered the same day. The Legislature by the reenactment of this law evidently intended to regulate, control and render unprofitable the pursuing of such occupation within the borders of the State. Under the police power they have the authority to pass this law in so far as it wholly relates to business carried on entirely within this State, and as the court always gives to an enactment of the Legislature that construction which will sustain its constitutionality, when either of two constructions is permissible, we hold that the law is not violative of any provision of our State Constitution, and inasmuch as no question of interstate commerce is involved, the question of whether this Act prohibits or attempts to prohibit or regulate interstate shipments, or the taking of orders for intoxicating liquors to be shipped from some point beyond the State lines, can not arise.

However, we will state that we do not agree that this Act is in conflict with the Federal Constitution, and the laws passed thereunder by Congress. To hold that a man may establish in Texas a place of business, and such place of business is beyond the control or regulation by the State, is not in accordance with out view of the law. It is true that in the case of Leisy v. Hardin, 135 U. S., 100, it is held that "a citizen of one State has the right to import beer into another State, and the right to sell it there in its original packages," even though the sale had been prohibited by the laws of the State. This opinion was rendered by a divided court, Justices Gray, Harlan and Brewer dissenting in vigorous terms, and Congress immediately passed an Act to remedy the conditions brought about by this opinion known as the "Wilson bill." (See Acts of Congress, chapter 728, Act of August 8, 1890.) However, the opinion in the case of Leisy v. Hardin, supra, had been in a great measure limited by the Supreme Court in the case of Emert v. Missouri, 156 U. S., 296, and this court in the case of Saulsbury v. The State, 43 Texas Crim. Rep., 90, 63 S. W. Rep., 568, followed the opinion of the Supreme Court in the Emert case. See also Hopkins v. U. S., 171 U. S., 578; Schollenberger v. Pennsylvania, 171 U. S., 24. By these opinions it will be seen that a peddler going from place to place is held to be subject to the police power of the State, even though he is handling and selling goods manufactured in another State. In a more recent case, Delamater v. South Dakota, 205 U. S., 96 (51 Law. Ed., 727), the question of the right of a State to regulate and prohibit the occupation or business of soliciting orders for intoxicating liquors has been discussed and decided by the Supreme Court of the United States, and that court holds that it is within the police power of a State to regulate and prohibit such character of dealing in intoxicating liquors, taking the exact contrary view to that expressed by this court in the Ex parte Massey case, 49 Texas Crim. Rep., 60, 92 S. W. Rep., 1086. In the Delamater case the Supreme Court of the United States holds:

"All the assignments of error involve the proposition that the State statute, as construed and applied by the court below, is repugnant to the commerce clause of the Constitution. It is manifest, as the subject dealt with is intoxicating liquors, that the decision of the cause does not require us to determine whether the restraints which the statute imposes would be a direct burden on interstate commerce if generally applied to subjects of such commerce, but only to decide whether such restraints are a direct burden on interstate commerce in intoxicating liquors as regulated by Congress in the Act commonly known as the Wilson Act. 26 Stat., at L. 313, chap. 728, U. S. Comp. Stat., 1901, p. 3177. For this reason we at once put out of view decisions of this court, which are referred to in argument and which are noted in the margin, because they concerned only the power of a State to deal with articles of interstate commerce other than,

intoxicating· liquors, or which, if concerning intoxicating liquors, related to controversies originating before the enactment of the Wilson law.

"The general power of the State to control and regulate the business of dealing in or soliciting proposals within their borders for the purchase of intoxicating liquors is beyond question. With the existence of this general power we are not, therefore, concerned. We are hence called upon only to consider whether the general power of the State to control and regulate the liquor traffic and the business of dealing or soliciting proposals for the dealing in the· same within the State was inoperative as to the particular dealings here in question, because they were interstate commerce, and therefore could not be subjected to the sway of the State statute without causing that statute to be repugnant to the commerce clause of the Constitution of the United States. . . . .

"It is settled by a line of decisions of this court, noted in the margin, that the purpose of the Wilson Act, as a regulation by Congress of interstate commerce, was to allow the States, as to intoxicating liquors, when the subject of such commerce, to exert ampler power than could have been exercised before the enactment of the statute. In other words, that Congress, ·sedulous to prevent its exclusive right to regulate commerce from interfering with the power of the States over intoxicating liquors, by the Wilson Act adopted ·a special rule enabling the States to extend their authority as to such liquor shipped from other States before it became commingled with the mass of other property in the State by a sale in the original package.

"The proposition relied upon, therefore, when considered in the light of the Wilson Act, reduces itself to this: Albeit the State of South Dakota had power within its territory to prevent the sale of intoxicating liquors, even when shipped into that State from other States, yet South Dakota was wanting in authority to prevent or regulate the carrying on within its borders of the business of soliciting proposals for the purchase of liquors, because the proposals were to be consummated outside of the State, and the liquors to which they related were also outside the State. This, however, but comes to this: That the power existed to prevent sales of liquor, even when brought in from without the State, and yet there was no authority to prevent or regulate the ·carrying on of the accessory business of soliciting orders within the State. Aside, however, from the anomalous situation to which the proposition thus conduces, we think to maintain it would be repugnant to the plain spirit of the Wilson Act. That Act, as we have seen, manifested the conviction of Congress that control by the States over the traffic of dealing in liquor within their borders was of such importance that it was wise to adopt a special regulation of interstate commerce on the subject. When, then, for the carrying out of this purpose, the regulation ex-

pressly provided that intoxicating liquors coming into a State should be as completely under the control of a State as if the liquor had been manufactured therein, it would be, we think, a disregard of the purpose of Congress to hold that the owner of intoxicating liquors in one State can, by virtue of the commerce clause, go himself or send his agent into such other State, there, in defiance of the law of the State, to carry on the business of soliciting proposals for the purchase of intoxicating liquors.

"Passing from these general considerations, let us briefly more particularly notice some of the arguments relied upon.

"As we have stated, decisions of this court interpreting the Wilson Act have held that that law did not authorize State power to attach to liquor shipped from one State into another before its arrival and delivery within the State to which destined. From this it is insisted, as none of the liquor covered by the proposals in this case had arrived and been delivered within South Dakota, the power of the State did not attach to the carrying on of the business of soliciting proposals, for, until the liquor arrived in the State, there was nothing on which the State authority could operate. But this is simply to misapprehend and misapply the cases and to misconceive the nature of the Act done in the carrying on the business of soliciting proposals. The rulings in the previous cases to the effect that, under the Wilson Act, State authority did not extend over liquor shipped from one State into another until arrival and delivery to the consignee at the point of destination, were but a recognition of the fact that Congress did not intend, in adopting the Wilson Act, even if it lawfully could have been done so, to authorize one State to exert its authority in another State by preventing the delivery of liquor embraced by transactions made in such other State. The proposition here relied on is widely different, since it is that, despite the Wilson Act, the State of South Dakota was without power to regulate or control the business carried on in South Dakota of soliciting proposals for the purchase of liquors, because the proposals related to liquor situated in another State. But the business of soliciting proposals in South Dakota was one which that State had a right to regulate, wholly irrespective of when or where it was contemplated the proposals would be accepted or whence the liquor which they embraced was to be shipped. Of course, if the owner of the liquor in another State had a right to ship the same into South Dakota as an article of interstate commerce, and, as such, there sell the same in the original package, irrespective of the laws of South Dakota, it would follow that the right to carry on the business of soliciting in South Dakota was an incident to the right to ship and sell, which could not be burdened without directly affecting interstate commerce. But, as by the Wilson Act, the power of South Dakota attached to intoxicating liquors, when shipped into that State from another State, after delivery, but before the sale in the original package, so as to authorize South Da-

kota to regulate or forbid such sale, it follows that the regulation by South Dakota of the business carried on within its borders of soliciting proposals to purchase intoxicating liquors, even though such liquors were situated in other States, can not be held to be repugnant to the commerce clause of the Constitution, because directly or indirectly burdening the right to sell in South Dakota—a right which, by virtue of the Wilson Act, did not exist. . . .

"It having been thus settled that under the Wilson Act a resident of one State had the right to contract for liquors in another State and receive the liquors in the State of his residence for his own use, therefore, it is insisted, the agent or traveling salesman of a nonresident dealer in intoxicating liquors had the right to go into South Dakota and there carry on the business of soliciting from residents of that State orders for liquor, to be consummated by acceptance of the proposals by the nonresident dealer. The premise is sound, but the error lies in the deduction, since it ignores the broad distinction between the want of power of a State to prevent a resident from ordering from another State liquor for his own use, and the plenary authority of a State to forbid the carrying on within its borders of the business of soliciting orders for intoxicating liquors situated in another State, even although such orders may only contemplate a contract to result from final acceptance in the State where the liquor is situated. The distinction between the two is not only obvious, but has been foreclosed by a previous decision of this court. That a State may regulate and forbid the making within its borders of insurance contracts with its citizens by foreign insurance companies or their agents is certain. Hooper v. California, 155 U. S., 648, 39 L. Ed., 297, 5 Inters. Com. Rep., 610, 15 Sup. Ct. Rep., 207. But that this power to prohibit does not extend to preventing a citizen of one State from making a contract of insurance in another State is also settled. Allgeyer v. Louisiana, 165 U. S., 578, 41 L. Ed., 832, 17 Sup. Ct. Rep., 427. In Nutting v. Massachusetts, 183 U. S., 553, 46 L. Ed., 324, 22 Sup. Ct. Rep., 238, the court was called upon to consider these two subjects, that is, the power of the State, on the one hand, to forbid the making within the State of contracts of insurance with unauthorized insurance companies, and the right of the individual, on his own behalf, to make a contract with such insurance companies in another State as to property situate within the State of residence. The case was brought to this court to review a conviction of Nutting, a citizen of Massachusetts, for having negotiated insurance with a company not authorized to do business in Massachusetts, contrary to the statutes of that State. Briefly, the facts were that Nutting, an insurance broker, solicited in Massachusetts a contract of insurance on property belonging to McKie situated in that State. The proposal was accepted outside of the State of Massachusetts and the policy also issued outside of that State. The contention of the plaintiff in error was that, as the contract was

consummated outside of Massachusetts, the conviction was repugnant to the Fourteenth Amendment, because the acts done did not fall within the general principle announced in Hooper v. California, supra, but were within the ruling in Allgeyer v. Louisiana. The conviction was affirmed, not because the contract was consummated in Massachusetts, but upon the ground that the right of an individual to obtain insurance for himself outside of the State of his residence did not sanction the conduct of Nutting, as an insurance broker, in carrying on the business in Massachusetts of soliciting unauthorized insurance. After reviewing the Hooper and Allgeyer decisions and pointing out that there was no conflict between the two cases, the court said (p. 558, L. Ed., 327, Sup. Ct. Rep., p. 240):

" 'As was well said by. the Supreme Judicial Court of Massachusetts: "While the Legislature can not impair the freedom of McKie to elect with whom he will contract, it can prevent the foreign insurers. from sheltering themselves under his freedom in order to solicit contracts which otherwise he would not have thought of making. It may prohibit not only agents of the insurers, but also brokers, from soliciting or intermeddling in such insurance, and for the same reasons." 175 Mass., 156, 78 Am. St. Rep., 485, 55 N. E., 895.'

"The ruling thus made is particularly pertinent to the subject of intoxicating liquors and the power of the State in respect thereto. As we have seen, the right of the States to prohibit the sale of liquor within their respective jurisdictions in and by virtue of the regulation of commerce embodied in the Wilson Act is absolutely applicable to liquor shipped from one State into another, after delivery, and before the sale in the original package. It follows that the authority of the States, so far as the sale of intoxicating liquors within their borders is concerned, is just as complete as is their right to regulate within their jurisdiction the making of contracts of insurance. It hence must be that the authority of the States to forbid agents of nonresident liquor dealers from coming within their borders to solicit contracts for the purchase of intoxicating liquors which otherwise the citizen of the State 'would not have thought of making' must be as complete and efficacious as is such authority in relation to contracts of insurance, especially in view of the conceptions of public order and social well-being which it may be assumed lie at the foundation of regulations concerning the traffic in liquor.·

"The contention that the law of South Dakota was a taxing law, and not a police regulation, and therefore not within the purview of the Wilson Act, is in conflict with the purpose of that law as interpreted by the Supreme Court of South Dakota. State ex rel. Grigsby v. Buechler, 10 S. D., 156, 72 N. W., 114. Besides, the contention is foreclosed by the ruling of this court in Pabst Brewing Co. v. Crenshaw, supra."

Thus it is seen that the Supreme Court of the United States holds,

taking into consideration the Wilson Act, that the law regulating the taking of orders is not violative of any provision of the Federal Constitution, and not being violative of any provision of the State Constitution, is but an exercise of the police power by the Legislature, and is valid. Under the opinion in the case last cited, by the Supreme Court of the United States, the case of Ex parte Massey, 49 Texas Crim. Rep., 60, 92 S. W. Rep., 1086, is hereby overruled, and the judgment of the lower court in this case is affirmed.

*Affirmed.*

Davidson, Presiding Judge, absent.

### ON REHEARING.

#### January 3, 1912.

HARPER, JUDGE.—This case was affirmed at a former day of this term, and appellant has filed a motion for rehearing, in which he calls our attention to the order of the Commissioners Court levying the county occupation tax. In the bill of exceptions no objection is reserved that the tax was levied at a special session of the Commissioners Court and not at a regular term, and the bill of exceptions does not show this to be a fact. However, by referring to the statement of facts it is made to appear that the order levying the county occupation tax was made at a called session of the Commissioners Court held on the 13th day of September.

Article 1540 of the Revised Civil Statutes provides: "No county tax shall be levied except at a regular term of the court and when all the members of said court are present." This objection not having been urged at the time of the introduction of the order, ordinarily appellant could not avail himself of it at this time, but inasmuch as it took an order of the court to levy the tax, and this order being made at a term when the court was not authorized to make it, no levy has been legally made, and the county would not be authorized to collect the tax. Consequently only the State tax was due at the date of the institution of this prosecution, and the court erred in authorizing the jury to assess a fine equal to both the State and county tax, and the verdict of the jury is unauthorized in law in assessing as a part of the punishment the county tax. In a civil suit the court would be authorized to reform the judgment, but no such authority has been conferred on this court by the Legislature. Therefore, for the error in the charge authorizing the jury to assess the amount of the county tax as a part of the punishment, and the jury so doing in their verdict, the motion for rehearing must be granted, the judgment of affirmance set aside, and the cause reversed and remanded on account of this error, it being made to appear no county tax has ever been legally levied.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

DAVIDSON, PRESIDING JUDGE.—I do not concur in holding the Act under · which appellant is prosecuted to be constitutional. Will file reasons later.

DAVIDSON, PRESIDING JUDGE (dissenting).—When the original opinion was handed down in this case I was not present, nor did I participate in the decision. Motion for rehearing was filed, and on one proposition granted, and the judgment reversed and the cause remanded. The original opinion, however, did not discuss the question upon which the judgment was finally reversed, but confined itself to a discussion of the validity of the Act of the Thirty-First Legislature, page 53, under which the prosecution occurred. That Act was held valid and provides that "In all counties, justice precincts, towns, cities or other subdivisions of a county where the qualified voters thereof have by a majority vote determined that the sale of intoxicating liquors shall be prohibited therein, there is hereby levied upon all firms, persons, associations of persons and corporations that pursue the business of selling or · offering for sale any intoxicating liquors by soliciting or taking orders therefor in any quantities whatsoever, in any such county, justice precinct, town, city or other subdivision of a county, an annual State tax of four thousand ($4,000) dollars, in each county, and also each incorporated city or town may levy an annual tax not exceeding two thousand ($2,000) dollars in any such county or incorporated city or town where such . business is pursued." This is section 1 of the Act of the Thirty-First Legislature, found on page 53 of the Act of 1909.

This Act authorizes any person or association of persons or corporations, or firms, by paying the tax provided to *sell intoxicating liquors* as a business through means of soliciting or taking orders in local option territory. This Act became effective on February 24, 1909. At the same session of the Legislature, on page 284 of the Act of that body, this Act is found: "If any person shall engage in or pursue the occupation or business of selling intoxicating liquors except as permitted by law, in any county, justice precinct, city, town or subdivision of a county in which the sale of intoxicating liquor has been or shall hereby be prohibited under the laws of this State, he or she shall be punished by confinement in the penitentiary not less than two, nor more than five years."

These two Acts having been passed by the same legislative body at the same session, should be construed together, and both held valid if legally it can be done. The authorities on this proposition are very numerous, some of which I cite: Neil v. Keese, 5 Texas, 23; Lovett v. Casey, 17 Texas, 594; Cain v. State, 20 Texas, 355; Scoby v. Sweatt, 28 Texas, 713; Austin v. G., C. & S. F. Ry. Co., 46 Texas, 236; Laughter v. Seela, 59 Texas, 177; Walker v. State, 7 Texas Crim. App., 245; McGrady v. Terrell, 98 Texas, 427; Garrison v. Richards, 50 Texas, 397, 107 S. W. Rep., 861; Joliff v.

State, 53 Texas Crim. Rep., 61, 109 S. W. Rep., 176. It also seems to be a well settled rule that where two irreconcilable statutes go into effect on the same day, or at the same session, the one approved last controls. Garrison v. Richards, 50 Texas, 397, 107 S. W. Rep., 861. Another general rule is that all laws in pari materia, or in relation to the same subject matter, that is, to the same person, thing or classes, are to be construed together. This has been the invariable rule in Texas since Fowler v. Poor, Dallam, 401. The authorities are harmonious on this line, and I deem it unnecessary to cite them. Another rule is, if when considered together there appears an absolute irreconcilable conflict or repugnancy as they can not stand together, then the rule is that the statute last enacted will control. In addition to the authorities already cited, I cite Bryan v. Sunberg, 5 Texas, 418; Sterman v. State, 31 Texas, 734; Etter v. M. P. Ry. Co., 2 Civil App., 58; Chiles v. State, 1 Texas Crim. App., 27; Holden v. State, 1 Texas Crim. App., 225; Davis v. State, 2 Texas Crim. App., 425. These are perhaps enough authorities on the general proposition involved.

Reading these two Acts together we find that on the 24th of February, 1909, the Legislature authorized the sale of intoxicating liquors in local option territory upon the payment of the tax specified in the Act above quoted. It will be useless to discuss the proposition that where the Legislature authorizes, by virtue of a tax, the carrying on of the business and makes it legitimate, that the party can not be punished for doing that particular business by compliance with the statute authorizing him to follow or pursue that business or occupation. By the Act punishing as criminal the sale of intoxicants in local option territory, it will be seen that if the party who takes out the license or pays the tax does pursue the business in local option territory as specified in the former Act, he will be sent to the penitentiary under the latter Act. It is made a felony by the latter Act, a conviction for which would render the convicted party infamous. This law went into effect ninety days after the adjournment of the session of the Legislature which enacted it. The other went into effect immediately upon its passage. So it will be seen that the felony statute is the later statute on the subject, and if there be an irreconcilable conflict in the two, under the authorities cited, the latter repeals the former Act. That there is an irreconcilable conflict is not to be questioned. By no process of reasoning can the two statutes be reconciled, that is, one authorizing a man to do a certain thing without criminality, and the other convicting him as a felon for doing that act. Without going further into a discussion of this phase of the case, it occurs to me that the latter Act is in such direct conflict and so antagonistic to the former that the two can not stand, and the latter Act must therefore be held valid. They can not both be valid. It certainly ought not to be contended with any degree of candor that the State can or would intentionally, through its leg-

islative body, license a citizen to do a thing, receive his money under the guise of a tax for the purpose of authorizing him to do that particular thing, and then send him to the penitentiary for doing the authorized act. Wherever the State authorizes her citizenship to follow an occupation or pursue a business, and accepts the money of the citizen, she guarantees to him the right to follow that business, and further guarantees the power of the State to protect that citizen in the doing of the authorized act. It would not do to say that the State or the legislative body intended by this means to entrap one of her citizens into a violation of the law and thus perpetrate a wrong on him and then hold for punishment. Wherever the legislative authority licenses an occupation, this is authority to the citizen to pursue that occupation by compliance with the statute, and when he does he has the permission, privilege or right to do the acts therein specified, and under such circumstances the good faith, honor and integrity of State stands pledged to protect him in doing the privileged act. If the licensed act is constitutional, then the State stands pledged by all the power of its governmental authority to protect the citizen in following that occupation, and in good conscience and in good faith the courts of the State should see that the citizen is protected in following the occupation or pursuing the business. If both Acts are to be held valid, then the same Legislature by the subsequent Act has entrapped the citizen into paying his money and following the occupation mentioned, and for so doing he is to be incarcerated in the penitentiary for a term of years with the stamp of infamy upon his name. This would be certainly an outrageous act of injustice.

2. I am of opinion that appellant's contention is correct, that the Act under consideration is in violation of the Constitution wherein it undertakes to authorize the citizen to follow the business or pursue the occupation of selling intoxicating liquors in local option territory by paying the occupation tax specified in the statute. It authorizes the following of a business or the pursuing of an occupation which is prohibited by the majority of the voters of that territory, in obedience to section 20, article 16, of the Constitution. That section provides that by a majority vote of the people of the mentioned territory the selling of intoxicants shall be prohibited, and it has always been held, and the Constitution itself so provides, that where the local option law is put into operation by a vote of the majority of the voters of a given territory, the sale of intoxicants is prohibited within that territory, and that when this occurs the local option law supersedes and supplants all character of selling of intoxicants in said territory. Article 16, section 20, of the Constitution; Robertson v. State, 5 Texas Crim. App., 155; Boone v. State, 12 Texas Crim. App., 184; Donaldson v. State, 15 Texas Crim. App., 24; Ex parte Lynn, 19 Texas Crim. App., 293; Robertson v. State, 12 Texas Crim. App.,

541; Gibson v. State, 34 Texas Crim. Rep., 218; Rathburn v. State, 88 Texas, 281; Rauch v. Com., 78 Pa. St., 490; State v. Yewell, 63 Md., 120, 1 So. Rep., 632; Com. v. Jarrell, 5 S. W. Rep., 763, 5 Dakota, 433, 25 Fla., 347; Bagley v. State, 103 Ga., 388; Com. v. Mueller, 81 Pa. St., 127; Wheeler v. State, 64 Miss., 462; Young v. Com., 14 Bush., 161, 38 Mo., 566; Black on Intoxicating Liquors, 90 to 198. This Act undertakes to authorize the business of selling intoxicants in local option territory by reason of the payment of the specified tax. This can not be done where the sale of such intoxicants has been prohibited by a vote of the people of that territory. The Act is unconstitutional for this reason.

3. The licensed Act is in direct conflict not only with the local option law, and supplants it if held constitutional, but it is in positive conflict with the subsequent Act of the same Legislature, page 284, which punishes a citizen for doing the licensed act by confining him in the penitentiary for a period of two to five years. It is also in conflict with another phase of the local option law, to wit, the punishment for a single sale in the local option territory. These laws are so irreconcilably in conflict that they can not all stand. The subsequent Act, or that found upon page 284 of the Act of the Thirty-First Legislature, punishing those who pursue the business of selling intoxicants in local option territory, has been held constitutional in quite a number of decisions. This law has been held by a majority of this court effective in local option territory whether the people had voted on the local option law before or subsequent to the passage of said Act. See Fitch v. State, 58 Texas Crim. Rep., 366, 127 S. W. Rep., 1040; Slack v. State, 61 Texas Crim. Rep., 372, 136 S. W. Rep., 1073; Bell v. State, 62 Texas Crim. Rep., 242, 137 S. W. Rep., 670; Dozier v. State, 62 Texas Crim. Rep., 258, 137 S. W. Rep., 679, and other decisions rendered since its enactment.

4. This law, if constitutional otherwise, would be unconstitutional in that it levies a tax which is prohibitory and can not be construed as a revenue measure. Article 3, section 48, of the Constitution, limits the Legislature in its "right to levy taxes or impose burdens upon the people in all matters except to raise revenue sufficient for the economical administration of the government." To the candid mind the heavy tax mentioned in the statute can not be construed as levied for revenue purposes, for the simple reason that it is placed so high that the business can not be carried on, or the occupation followed. It was intended only as a prohibition and not as a revenue measure.

5. This statute can not be regarded as a police regulation, but only and purely as a tax measure. Ex parte Woods, 52 Texas Crim. Rep., 575. Judge Ramsey, delivering the opinion of the court in the Woods case, so fully treats of this matter that I deem it unnecessary to do more than to cite the opinion, and I further think it unnecessary to do more than to cite the opinion, and I further think it un-

necessary to cite other cases. The act of levying the tax under discussion has none of the earmarks and presents no evidence whatever of the fact that it is a police regulation. It does not undertake by any of its terms to regulate the doing of the business. It simply levies a tax of four thousand dollars for the State, two thousand dollars for the county, and two thousand for the city, making the sum total of eight thousand dollars, upon the paying of which and the obtaining of the license from the clerk, the party can pursue the business without any regulation. Under that Act if the tax is paid and the license obtained, the party can sell in local option territory adlibitum through the means of taking orders. There is no attempt to regulate how this shall be done or where the business shall be carried on, and there are no regulations controlling it.

These questions, some of which I have not discussed, were very vigorously presented to this court by my Brother Harper in the case of Jones v. State, found reported in the 60 Texas Crim. Rep., 611, before he became a member of this court. The brief as reported shows careful research and a very thorough analysis of the laws under consideration. My Brother Harper then insisted in a strongly written brief that this law was unconstitutional for several reasons. I call attention to that brief with commendation, rather than my Brother Harper's opinion in this case. I believe he was right in the Jones case, supra, and thoroughly wrong in his opinion in this case. I do not care to discuss the matter further. This judgment ought to be reversed and prosecution dismissed.

With these remarks I enter this my dissent.